**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

MATTHEW HAMBY, et al.,

                              Plaintiffs,

              v.                                    Case No. 3:14-cv-00089-TMB

SEAN C. PARNELL, et al.,

                              Defendants.            O R D E R

## I.      INTRODUCTION

The issue in this case is whether Alaska's constitutional and statutory provisions prohibiting same-sex marriage and the recognition of same-sex marriages lawfully entered in other states violate the Fourteenth Amendment of the United States Constitution.[1] The Plaintiffs are five same-sex couples living in Alaska; four of the couples are lawfully married in other states and one couple is unmarried but seeks to marry in Alaska ("Plaintiffs").[2]  All couples wish to have their commitments legally recognized by the State of Alaska. The Defendants, sued in their official capacities, are: Sean Parnell, the Governor of the State of Alaska; Michael Geraghty, the Attorney General of the State of Alaska; William J. Streur, the Commissioner of the Alaska Department of Health and Human Services; and Phillip Mitchell, the section chief of the Division of Public Health of the Alaska Department of Health and Social Services for the Alaska Bureau of Vital Statistics ("Defendants").[3]

---

[1]  *See* Dkt. 1.

[2]  Dkt. 20 at 10.

[3]  Dkt. 1 at 7-8.

Case 3:14-cv-00089-TMB   Document 38   Filed 10/12/14   Page 1 of 25

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983 and filed a motion for summary judgment, arguing that Alaska's laws banning same-sex marriage and refusing to recognize a same-sex marriage lawfully entered in another state violate both the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the U.S. Constitution.[4]  Plaintiffs seek declaratory and injunctive relief.[5]  The Defendants deny any violation of the Plaintiffs' constitutional rights and therefore seek summary judgment as a matter of law in their favor.[6]

For the reasons that follow, the Plaintiffs' motion for summary judgment is GRANTED.  The Court finds that Alaska's ban on same-sex marriage and refusal to recognize same-sex marriages lawfully entered in other states is unconstitutional as a deprivation of basic due process and equal protection principles under the Fourteenth Amendment of the U.S. Constitution.

## II.    BACKGROUND

Plaintiffs challenge the constitutionality of three Alaskan laws: Article 1, Section 25 of the Alaska Constitution and Alaska statutes Section 25.05.011 and Section 25.05.013 (collectively, "the same-sex marriage laws").  Article 1, Section 25 of the Alaska Constitution, adopted in 1998 and effective in 1999, confines the definition of a valid marriage to couples of the opposite sex:

> **§25. Marriage**
> To be valid or recognized in this State, a marriage may exist only between one man and one woman.[7]

---

[4]  *See* Dkt. 20.

[5]  Dkt. 1 at 2, 33.

[6]  Dkt. 31.

[7]  AK CONST. Art. 1, §25 (1998).

Alaska statute Section 25.05.011, enacted in 1996, reiterates the definition of marriage as being between male-female couples and prevents the solemnization of any marriage that does not meet that requirement:

> **§ 25.05.011. Civil Contract**
> (a) Marriage is a civil contract entered into by one man and one woman that requires both a license and solemnization. The man and the woman must each be at least one of the following:
>> (1) 18 years of age or older and otherwise capable;
>> (2) Qualified for a license under Alaska Stat. § 25.05.171; or
>> (3) A member of the armed forces of the United States while on active duty.
> (b) A Person may not be joined in marriage in this state until a license has been obtained for that purpose as provided in this chapter. A marriage performed in this state is not valid without solemnization as provided in this chapter.[8]

Alaska law recognized valid marriages entered in other states. However, in 1996, Section 25.05.013 was written to specifically exclude out-of-state same-sex marriages from that formal recognition. It provides:

> **§ 25.05.013. Same-sex marriages.**
> (a) A marriage entered into by persons of the same sex, either under common law or under statute, that is recognized by another state or foreign jurisdiction is void in this state, and contractual rights granted by virtue of the marriage, including its termination, are unenforceable in this state.
> (b) A same-sex relationship may not be recognized by the state as being entitled to the benefits of marriage.[9]

In combination, the same-sex marriage laws specifically identify homosexual couples as a group that is (1) not entitled to the benefits and responsibilities conferred by marriage, and (2) excluded from having lawful out-of-state marriages recognized by the State of Alaska. The Plaintiffs argue that the laws' effect stigmatizes same-sex couples and their children by relegating them to a "second class status," as well as "undermines the Plaintiffs' ability to achieve their

---

[8] ALASKA STAT. §25.05.011 (1996).

[9] ALASKA STAT. §25.05.013 (1996).

aspirations, disadvantages them financially, and denies them 'dignity and status of immense import.'"[10] The Plaintiffs allege that these harms deprive them of their rights under the Fourteenth Amendment, which include the right of all people to choose whom to marry and to be treated equally under the law.[11]

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12]  The facts of this case are not in dispute; the Plaintiffs present a facial challenge to the constitutionality of Alaska's laws prohibiting same-sex marriage and the recognition of same-sex marriages lawfully entered in other states. Challenges regarding facial constitutionality implicate only issues of law.[13]  If Plaintiffs demonstrate that Alaska's same-sex marriage laws are facially invalid, the Court will strike the laws as unconstitutional.[14]

The Fourteenth Amendment of the U.S. Constitution provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."[15]  "At the heart of [Fourteenth Amendment] liberty is the right to define one's own concept of existence, of meaning, of the

---

[10]  Dkt. 1 at 11 (quoting *United States v. Windsor*, 133 S.Ct. 2675, 2692 (2013)).

[11]  Dkt. 20 at 11;  *see Zablocki v. Redhail*, 434 U.S. 374, 384 (1978).

[12]  Fed. R. Civ. P. 56(a).

[13]  *See, e.g., U.S. v. Bynum*, 327 F.3d 986, 990 (9th Cir. 2003).

[14]  *See Citizens United v. Federal Election Com'n*, 558 U.S. 310, 312 (2010).

[15]  U.S. CONST. amend. XIV.

4

universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State."[16]  While the power to define and regulate marriage is allocated to the separate states, state laws still may not infringe upon individual constitutional rights.[17] Although the freedoms guaranteed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment are closely related and often intersect,[18] the Court will address each clause in turn.

### A. The Due Process Clause

Due process under the Fourteenth Amendment, containing both procedural and substantive components, protects "all fundamental rights comprised within the term liberty…from invasion by the States."[19]  Protection provided by the substantive component of due process "barr[s] certain government actions regardless of the fairness of the procedures used to implement them…[and] serves to prevent governmental power from being 'used for purposes of oppression.'"[20] Furthermore, "[n]either the Bill of Rights nor the specific practices of States at the time of the adoption of the Fourteenth Amendment marks the outer limits of the substantive sphere of liberty which the Fourteenth Amendment protects."[21]

---

[16] *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 851 (1992).

[17] *See, e.g., Windsor*, 133 S.Ct. at 2680; *Loving v. Virginia*, 388 U.S. 1, 7 (1967).

[18] *Lawrence v. Texas*, 539 U.S. 558, 575 (2003) ("Equality of treatment and the due process right to demand respect for conduct protected by the substantive guarantee of liberty are linked in important respects….").

[19] *Casey*, 505 U.S. at 846-47 (quoting *Whitney v. California*, 274 U.S. 357, 373 (1927)).

[20] *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (internal citation omitted) (quoting *Den ex dem. Murray v. Hoboken Land & Imp. Co.,* 59 U.S. 272, 277 (1855)).

[21] *Casey*, 505 U.S. at 848.

5

To be considered "fundamental," a right must be "objectively, deeply rooted in the Nation's history and tradition"[22] and "implicit in the concept of ordered liberty" to the point that "neither liberty nor justice would exist if they were sacrificed."[23]  In addition to procreation, contraception, family relationships, child rearing, and education,[24] the Supreme Court has consistently recognized that an individual's choice to marry is a fundamental right protected by due process.[25]  While the power to define and regulate marriage is allocated to the separate states, state laws still may not infringe upon individual constitutional rights.[26]

Here, the Court is initially tasked with determining whether the right to marry an individual of the same sex and the right to have legal recognition of a same-sex marriage entered in another state are fundamental rights. If so, the Court asks whether and to what degree Alaska's same-sex marriage laws infringe upon those rights.[27]  If the laws significantly interfere with the Plaintiffs'

---

[22] *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).

[23] *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937) (*overruled on other grounds by Benton v. Maryland*, 395 U.S. 784 (1969)).

[24] *Carey v. Population Services Int'l*, 431 U.S. 678, 685 (1977).

[25] *See Turner v. Safley*, 482 U.S. 78, 95 (1987) ("[T]he decision to marry is a fundamental right" and is "of fundamental importance for all individuals.");  *Cleveland Bd. of Educ. v. La Fleur*, 414 U.S. 632, 639-640 (1974) ("This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by…the Fourteenth Amendment.");  *Loving*, 388 U.S. at 12 ("The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness…fundamental to our very existence and survival.").

[26] *See, e.g., Windsor*, 133 S.Ct. at 2680; *Loving*, 388 U.S. at 7.

[27] *Beller v. Middendorf*, 632 F.2d 788, 807 (9th Cir. 1980) ("[S]ubstantive due process scrutiny of a government regulation involves a case-by-case balancing of the nature of the individual interest allegedly infringed, the importance of the government interest furthered, the degree of infringement, and the sensitivity of the government entity responsible for the regulation to more carefully tailored alternative means of achieving its goals.").

6

rights, the laws "cannot be upheld unless [they are] supported by sufficiently important state interests and [are] closely tailored to effectuate only those interests."[28]

### B. The Equal Protection Clause

In analyzing an equal protection challenge, the Court first identifies the classification made by the state.[29] Depending on the classification, the Court uses different standards of review to determine whether a law violates equal protection.[30] The highest level of scrutiny, strict scrutiny, applies to "suspect classes" (e.g., classifications based on race, religion, and national origin) and requires the government to prove that a discriminatory law is "narrowly tailored" to achieving a "compelling" state interest.[31] The lowest level of scrutiny, rational basis review, applies to classifications that are generally assumed to be valid (e.g., the elderly and mentally handicapped) and requires that the law be "rationally related" to a "legitimate" state interest.[32] The Court applies intermediate scrutiny for "quasi-suspect" classes (e.g., gender and illegitimacy), requiring that the law be "substantially related" to achieving a "sufficiently important governmental interest."[33]

In this case, the State of Alaska has constructed its marriage laws to exclude a class identified on the basis of sexual orientation. The Supreme Court has yet to declare what standard of review

---

[28] *Zablocki*, 434 U.S. at 388.

[29] *See, e.g., United States v. Lopez-Flores*, 63 F.3d 1469, 1472 (9th Cir. 1995)

[30] *Id.*

[31] *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007); *Johnson v. California*, 543 U.S. 499 (2005).

[32] *See Heller v. Doe*, 509 U.S. 312, 320 (1993); *Bower v. Whitman*, 671 F.3d 905, 917 (9th Cir. 2012).

[33] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440-41; *United States v. Virginia*, 518 U.S. 515, 524 (1996).

7

is appropriate for laws that discriminate on this basis, but the Court is not left without guidance. Just days ago, in *Latta, v. Otter*, the Ninth Circuit employed heightened scrutiny to consider the constitutionality of same-sex marriage bans in Nevada and Idaho because the laws "discriminate on the basis of sexual orientation."[34] At oral argument on October 10, 2014, the parties agreed that *Latta* is precedential in this circuit.[35]

   *Latta* unambiguously requires that the Court employ a heightened standard of review to this case. In *Latta*, the Ninth Circuit assessed the constitutionality of same-sex marriage bans in Idaho and Nevada that used similar language to that in Alaska's same-sex marriage bans.[36] Finding that the laws discriminate on the basis of sexual orientation, the Ninth Circuit employed heightened scrutiny to find that the states failed to demonstrate that the laws furthered any legitimate governmental purpose.[37] Lacking sufficient justification, the Ninth Circuit held that the laws were unconstitutional for "impos[ing] legal, financial, social and psychic harms on numerous citizens"

---

[34] 2014 WL 4977682 at *15 (9th Cir. Oct. 7, 2014). The Ninth Circuit's earlier decision in *Smithkline Beecham v. Abbott Laboratories*, 740 F.3d 471, 481-84 (9th Cir. 2014) provided that, in light of *Windsor*, "heightened scrutiny" is the appropriate standard of review when laws discriminate based on sexual orientation. Even absent the Ninth Circuit's decision in *Latta*, the Court would employ the heightened standard of review as required by *Smithkline*, leading to the same result found in this opinion.

[35] When oral argument began, a stay by the Supreme Court was in place as to part of the *Latta* decision; by the end of oral argument, that stay had been lifted. Regardless, *Latta* is the controlling law of this Circuit. *Wedbush, Noble, Cooke, Inc. v. S.E.C.*, 714 F.2d 923, 924 (9th Cir. 1983) ("It is fundamental that the mere pendency of an appeal does not, in itself, disturb the finality of a judgment. Similarly, the pendency of a petition for rehearing does not, in itself, destroy the finality of an appellate court's judgment.") (internal citations omitted).

[36] 2014 WL 4977682, at *4, n.2.

[37] *Id.* at *13, *33.

of Idaho and Nevada.[38] It is within this framework that the Court will determine the constitutionality of Alaska's same-sex marriage laws.

When applying a heightened standard of review under the Equal Protection Clause, the Court must invalidate discriminatory laws unless they have an "exceedingly persuasive justification."[39] The Defendants must show "at least that the classification serves important governmental objectives and that the discriminatory means employed are substantially related to achievement of those objectives."[40] Moreover, the classification must be based on legitimate government concerns "other than disagreement with the choice the individual has made."[41] Nevertheless, this Court recognizes the Supreme Court's cautioning that "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."[42] In the context of the case at hand, the Court analyzes the objectives of Alaska's same-sex marriage laws and their relationship to any important governmental objectives.

## IV. DISCUSSION

Since the Supreme Court struck down part of the federal Defense of Marriage Act ("DOMA") last year in *United States v. Windsor*, numerous federal courts have addressed the constitutionality of state bans on same-sex marriages.[43] Currently, four circuits have ruled on the issue; the Ninth,

---

[38] *Id*. at 32.

[39] *Virginia*, 518 U.S. at 531.

[40] *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982) (internal quotations omitted).

[41] *Hodgson v. Minnesota*, 497 U.S. 417, 435 (1990).

[42] *FCC v. Beach Communications, Inc*., 508 U.S. 307, 313 (1993).

[43] *Windsor*, 133 S.Ct. 2675;  *see, e.g*., *Brenner v. Scott*, 2014 WL 4113100 (N.D. Fla. Aug. 21, 2014);  *Love v. Beshear*, 2014 WL 2957671 (W.D. Ky. July 1, 2014);  *Whitewood v. Wolf*, 2014

9

Seventh, Fourth, and Tenth Circuits each held that state laws prohibiting same-sex marriage are unconstitutional.[44] While the question before the Court today is not identical to that in *Windsor*, the holding of the Supreme Court provides insight. The *Windsor* court found that DOMA "impose[d] a disadvantage, a separate status, and so a stigma upon all those who enter same-sex marriages" and created a differentiation that "demeans the [same-sex] couple, whose moral and sexual choices the Constitution protects."[45]

The Plaintiffs continuously cite *Windsor* to argue that Alaska's same-sex marriage laws are analogous to DOMA because the laws not only deny them "equal dignity" by treating heterosexuals and homosexuals differently, but are also demeaning to their families, undermine their personal autonomy, and are in violation of their constitutional rights.[46] The Defendants argue that *Windsor* is inapposite to this case because the Supreme Court's holding was based on the state's authority to define marriage and the inability of the federal government to interfere with that authority.[47] The Defendants' interpretation of *Windsor* is that it "stands for the proposition that the definition of marriage is an issue for the states."[48] State sovereignty in defining marriage

---

WL 2058105 (M.D. Pa. May 20, 2014); *DeBoer v. Snyder*, 973 F.Supp.2d 757 (E.D. Mich. 2014); *DeLeon v. Perry*, 975 F.Supp.2d 632 (W.D. Tex. 2014); *McGee v. Cole*, 2014 WL 321122 (S.D. W. Va. Jan. 29., 2014).

[44] *See Latta*, 2014 WL 4977682; *Baskin v. Bogan,* 2014 WL 4359059 (7th Cir. Sept. 4, 2014); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014); *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014); *see also Bishop v. Smith*, 2014 WL 3537847 (10th Cir. July 18, 2014).

[45] 133 S.Ct. at 2693 (citing *Lawrence*, 539 U.S. 558).

[46] Dkt. 20 at 2, 24-25, 36-40, 43.

[47] 133 S.Ct. at 2689-91.

[48] Dkt. 31 at 13.

Case 3:14-cv-00089-TMB   Document 38   Filed 10/12/14   Page 10 of 25

is certainly emphasized in *Windsor*, but the primary principle behind the Supreme Court's ruling is that regulation of marriage consistent with the Constitution requires that state laws not "degrade or demean" a class of people without sufficient justification.[49]

## A. Alaska's Same-Sex Marriage Laws Violate Due Process

### 1. Alaska's ban on same-sex marriage violates the unmarried plaintiffs' fundamental right to choose whom to marry

The parties do not dispute that our nation has a longstanding history of recognizing an individual's fundamental right to marry, which is protected by the Due Process Clause of the Fourteenth Amendment.[50] However, the Plaintiffs argue that same-sex marriage is encompassed in the right to marry while the Defendants contend that the right to marriage, as rooted in our nation's history and tradition, is strictly between a man and a woman.

It is true, as Defendants argue, that in categorical terms "[t]he Supreme Court has never held that there is a fundamental constitutional right to same-sex marriage."[51] This does not, however, equate to the notion that no such right exists. As the Supreme Court in *Casey* explained:

> It is tempting, as a means of curbing the discretion of federal judges, to suppose that…the Due Process Clause protects only those practices, defined at the most specific level, that were protected against government interference by other rules of law when the Fourteenth Amendment was ratified. But such a view would be inconsistent with our law. It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter.[52]

In other words, even rights not explicitly mentioned in the Bill of Rights can be protected by substantive due process. For example, in *Loving v. Virginia*, the "right to interracial marriage"

---

[49] 133 S.Ct. at 2695.

[50] *Glucksberg*, 521 U.S. at 726.

[51] Dkt. 31 at 12.

[52] *Casey*, 505 U.S. at 847 (internal citations omitted).

11

was not included in the Constitution (in fact, it was illegal in most states at the time), nor did the Supreme Court declare a fundamental right to interracial marriage. Rather, the decision hinged on the determination that the freedom to marry, without an additional descriptor, "resides with the individual and cannot be infringed by the State."[53] In this way, the Supreme Court found interracial marriage "to be an aspect of liberty protected against state interference by the substantive component of due process."[54]

While the Supreme Court cases defining marriage as a "fundamental right" involved opposite-sex couples, nothing in the decisions indicates that the fundamental right to marry is circumscribed by other defining characteristics (e.g., in this case, a fundamental right to "*male-female* marriage"). The Supreme Court has never described or defined marriage as a right that is dependent upon the particular facts of the case before it or a right belonging to a particular group; on the contrary, its discussion of marriage has consistently been "in broad terms independent of the persons exercising it."[55] The choice of whom to marry is an "associational right[]" that is "of basic importance in our society" and is "sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect."[56]

Our society places immense value on marriage because it "involve[es] the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy…."[57] In *Griswold v. Connecticut*, the Supreme Court described in detail the

---

[53] 388 U.S. at 12.

[54] *Casey*, 505 U.S. at 847-48.

[55] *Kitchen*, 755 F.3d at 1209.

[56] *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1971).

[57] *Casey*, 505 U.S. at 851.

12

autonomous essence of marriage and the private choice involved when entering such a commitment:

> Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions.[58]

More recently, in *Lawrence v. Texas*, the Supreme Court explained that "our laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education…. Persons in a homosexual relationship may seek autonomy for these purposes, just as heterosexual persons do."[59] The holding in *Lawrence* concerned an anti-sodomy law in Texas, but the reasoning was rooted in the persistent concept of individual privacy and independence when exercising the rights to make decisions on personal matters. In *Lawrence*, the critical mistake identified by the Supreme Court in its earlier reasoning is the same error made by Defendants in this case: in the desire to narrowly define the rights protected by the Fourteenth Amendment, they "fail[] to appreciate the extent of the liberty at stake."[60]

Our forefathers wrote the Bill of Rights hundreds of years ago and could not have predicted "the components of liberty in its manifold possibilities" as we see today.[61] As the Supreme Court articulately explained, "those who drew and ratified the Due Process Clause[]…knew times can

---

[58] 381 U.S. 479, 486 (1965).

[59] 539 U.S. at 574.

[60] *Id*. at 567.

[61] *Id*. at 578-79.

blind us to certain truths and later generations can see that laws once necessary and proper in fact only serve to oppress. As the Constitution endures, persons in every generation can invoke its principles in their own search for greater freedom."[62]  The Plaintiffs in this case do not ask the Court to recognize an entirely new fundamental right to same-sex marriage; rather, Plaintiffs wish to participate in the existing liberty granted to other couples to make a deeply personal choice about a private family matter.

Here, "[t]he inescapable fact is that adjudication of substantive due process claims may call upon the Court in interpreting the Constitution to exercise that same capacity which by tradition courts always have exercised: reasoned judgment….That does not mean we are free to invalidate state policy choices with which we disagree; yet neither does it permit us to shrink from the duties of our office."[63]  The Court has been called upon to use reasoned judgment to interpret the right to choose whom to marry and the breadth of that right under substantive due process.  It is in consideration of this duty that the Court finds that marriage between individuals of the same sex is encompassed by our nation's longstanding fundamental right to marry.

The Court then must determine whether Alaska's same-sex marriage laws significantly interfere with the Plaintiffs' right to marry whom they choose. The answer is obvious as to the unmarried Plaintiffs: the law prevents them from exercising that right.  For many years, there have been powerful voices condemning homosexual conduct as immoral, but the Court's obligation in this case is not to determine or mandate a particular moral code, but rather "to define the liberty of all."[64]  While homosexuality and the union of same-sex couples through marriage may be against

---

[62]  *Id.*

[63]  *Casey*, 505 U.S. at 849.

[64]  *Id.* at 850.

the beliefs or beyond the moral parameters of some Americans, the core purpose of the Fourteenth Amendment is to protect an individual's freedom by ensuring that a constitutional right is not "infringed simply because a majority of the people choose that it be."[65] Alaska's laws prohibiting same-sex marriage "usurp, disregard, and disrespect" the fundamental right of all homosexuals to choose who to marry; a right of liberty, privacy, and association freely given to heterosexuals.[66]

2. Alaska's refusal to recognize valid same-sex marriages entered in other states violates the married Plaintiffs' fundamental right to have their marriages recognized

In light of the Court's determination that Alaska's laws prohibiting same-sex marriage violate Plaintiffs' fundamental right to choose whom to marry, it necessarily follows that Alaska's anti-recognition law concerning valid same-sex marriages entered in other states also violates that right. By refusing to recognize valid same-sex marriages entered in other states and declaring them void in Alaska, Section 25.05.013 effectively strips same-sex married couples of their liberty interest in having their valid marriages recognized.[67] Therefore, Alaska Statute 25.05.013 also violates the married Plaintiffs' fundamental right to have their valid out-of-state marriages recognized under the due process clause.

If this case concerned only a due process claim, the Court would begin to assess the Defendants' assertions of the governmental interests and whether Alaska's same-sex marriage

---

[65] *Lucas v. Forty-Fourth Gen. Assembly of State of Colo.*, 377 U.S. 713, 736-37 (1964).

[66] *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Griswold*, 381 U.S. at 486; *M.L.B.*, 519 U.S. at 116.

[67] *See Windsor*, 133 S.Ct. at 2694 (The refusal of one jurisdiction to recognize a legally established marriage from another jurisdiction "demeans the couple, whose moral and sexual choices the Constitution protects…and whose relationship the [latter] State has sought to dignify.").

15

laws are related to those interests. However, since this case also involves a claim under the Equal Protection Clause, which requires the same inquiry, the Court reserves the analysis until after an initial discussion of the equal protection claim.

**B. Alaska's Same-Sex Marriage Laws Violate Equal Protection**

"A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense."[68] Alaska's same-sex marriage laws declare that it is more difficult for homosexuals to seek the benefits of lawful marriage with a person of their choosing than it is for heterosexuals. Even if we accept the Defendants' contention that Alaska's same-sex marriage laws were not intended to discriminate against or harm same-sex couples, but rather to "retain the traditional definition of marriage,"[69] the fact is that the laws do discriminate.

Defendants provide minimal evidentiary support for the argument concerning the legislative history of Alaska's same-sex marriage laws, stating simply that Alaskan voters chose to adopt the definition of marriage as between "one man and one woman."[70] Defendants point out that the Statement in Support of the Marriage Amendment for the *Official Election Pamphlet* declares that the amendment "does not 'target' anybody or 'deny' anybody their rights"; that "[a]ll Alaskans are equal before the law. But that's not what this debate is about."[71] In fact, that is exactly what the debate on marriage is about. By singling out homosexual couples and banning their ability to

---

[68] *Romer v. Evans*, 517 U.S. 620, 633 (1996).

[69] Dkt. 31 at 9.

[70] *Id*. at 9-10.

[71] *Id*. at 9.

marry an individual of their choosing, it is impossible to assert that all Alaskans are equal under the state's laws.

Defendants contend that the same-sex marriage laws do not deny any benefits, and the Court acknowledges that Alaska grants same-sex couples some benefits corresponding with those granted to legally-married opposite-sex couples. However, the inability to legally marry denies same-sex couples a panoply of state and federal benefits afforded opposite-sex couples.[72] The Court looks to *Windsor* where the Supreme Court found that the "principle purpose" and "necessary effect" of DOMA were to "impose inequality" on same-sex couples and their families by forbidding them from participating in marriage.[73] Here, rather than *promoting* marriage between a man and woman by granting them additional rights and privileges, the apparent purpose and practical effect of Alaska laws is to impose inequality upon same-sex couples by denying them the rights and privileges afforded heterosexual couples.

Intermediate scrutiny places the "demanding" burden of justification on the Defendants to prove that the objectives of Alaska's same-sex marriage laws are "substantially related" to achieving an "important governmental objective."[74] Additional considerations for assessing laws that discriminate based on sexual orientation include the "resulting injury and indignity," "the 'disadvantage' inflicted on gays and lesbians," and the "government-sponsored message" sent by

---

[72] *See, e.g.,* 26 U.S.C. § 6013 (granting married couples the ability to file income taxes jointly); 26 U.S.C. §1041 (right for married couples to transfer assets to one's spouse while married or during divorce without tax liability); 5 U.S.C. §§ 8901(5), 8905 (healthcare benefits for legally-married spouses of federal employees).

[73] *Windsor*, 133 S.Ct. at 2694-95.

[74] *Virginia*, 518 U.S. at 524, 533; *Hibbs v. Dep't of Human Resources*, 273 F.3d 844, 855 (9th Cir. 2001).

the laws about the status of homosexuals in our society.[75]  Here, Defendants assert one primary governmental objective: affirming the citizens' right to change law through the democratic process.  The Defendants' argument includes the voters' interests in maintaining the traditional definition of marriage and encouraging optimal, stable child-rearing environments that are implicated by the overarching theme of federalism.[76]

    1.  <u>Affirming Alaskan voters' right to decide how to define marriage</u>

Defendants rely on the Supreme Court's ruling in *Schuette v. Coalition to Defend Affirmative Action*[77] to emphasize the "right of the citizens to vote and decide the critical issues affecting their lives."[78]  Marriage is of particular interest to society as it is often the root or foundation of family units that create and strengthen communities.  It is not surprising that due to the importance and impact of marriage, a state's interest in regulating marriage within its boundaries includes the power to determine, within constitutional bounds, what marriage is and who may enter into those unions.[79]  It is obvious that the government has a strong interest in supporting the democratic process, which grants citizens the power to "seek a voice in shaping the destiny of their own times" and to have a hand in changing the social institutions of which they are a part.[80]

---

[75]  *Smithkline*, 740 F.3d at 482 (quoting *Windsor*, 133 S.Ct. at 2692-93).

[76]  Dkt. 31 at 24-27.

[77]  134 S.Ct. 1623 (2014).

[78]  Dkt. 31 at 15.

[79]  *Windsor*, 133 S.Ct. at 2691.

[80]  *Bond v. United States*, 131 S.Ct. 2355, 2364 (2011).

However, a state's right to define marriage is not unbounded; a state may not exercise its power to define marriage in a way that infringes upon individuals' constitutional rights.[81] "Though each faith, minister, and individual can define marriage for themselves, at issue here are laws that act outside that protected sphere. Once the government defines marriage and attaches benefits to that definition, it must do so constitutionally. It cannot impose a traditional or faith-based limitation upon a public right without a sufficient justification for it."[82] Many Alaskans may personally wish to enshrine their own definition of marriage in the law. However, this case does not concern whether any person or group finds same-sex marriage repugnant based on personal moral or religious beliefs; the Constitution protects the right to express one's personal beliefs and values, but it also protects same-sex couples from laws that negatively impact their Constitutional rights.[83] Even if a majority of citizens disapprove of homosexuality, an infringement on same-sex couples' constitutional rights "must be predicated on legitimate state concerns other than disagreement with the choice the individual has made."[84] The basic principle is that "fundamental rights may not be submitted to vote; they depend on the outcome of no elections."[85]

The Supreme Court has consistently struck down state laws that regulate marriage in an impermissible fashion, particularly when the regulation is one that withholds the right to marry

---

[81] *Loving*, 388 U.S. at 11-12; *see also* Dkt. 31 (Defendants concede: "Where the citizens have exercised their right to vote—their decision should not be overturned by the judiciary absent compelling circumstances such as the violation of a fundamental right.")

[82] *Bourke v. Beshear*, 2014 WL 556729 at *10 (W.D. Ky. Feb. 12, 2014).

[83] *See Geiger v. Kitzhaber*, 994 F.Supp.2d 1128, 1137-38 (D. Or. 2014).

[84] *Hodgson*, 497 U.S. at 435.

[85] *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943).

entirely for a particular group. For example, regardless of the majority's beliefs, a state may not refuse the right to marriage for an interracial couple,[86] nor for individuals that have not upheld their child-support obligations,[87] nor for the incarcerated.[88] Even if many Alaskan citizens have moral or religious sentiments that conflict with homosexuality, the mere "fact that the governing majority in a state has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice."[89]

Homosexuals are "among the most stigmatized, misunderstood, and discriminated-against minorities in the history of the world."[90] Alaska's denial of the benefits and dignity of marriage for them only perpetuates this discrimination without legitimate grounds. Same-sex couples comprise only a small portion of Alaska's population, and "[m]inorities trampled on by the democratic process have recourse to the courts; the recourse is called constitutional law."[91] To put it simply, "a primary purpose of the Constitution is to protect minorities from oppression by majorities.... Thus, considerations of federalism cannot carry the day...."[92]

---

[86] *Loving*, 388 U.S. at 11.

[87] *Zablocki*, 434 U.S. at 387-88.

[88] *Turner*, 482 U.S. at 96-99.

[89] *Lawrence*, 539 U.S. at 560 ("Moral disapproval of a group cannot be a legitimate governmental interest under the Equal Protection Clause because legal classifications must not be 'drawn for the purpose of disadvantaging the group burdened by the law.'") *Id*. at 583 (quoting *Dept. of Agriculture v. Moreno*, 413 US. 528, 633 (1973).

[90] *Baskin*, 2014 WL 4359059 at *11.

[91] *Id*. at *19.

[92] *Latta*, 2014 WL 4977682, at *29.

Case 3:14-cv-00089-TMB   Document 38   Filed 10/12/14   Page 20 of 25

Moreover, when assessing an equal protection challenge, regardless of the level of scrutiny employed by the Court, the stated government interests must have a logical relationship to the law in question. Even if the Court employed the lowest standard of review, it is illogical to say that Alaska's same-sex marriage laws are rationally related to serving the right of citizens to vote on significant changes to the law. Alaska's same-sex marriage laws governing the institution of marriage have nothing to do with promoting or ensuring a citizen's voting rights.

2. The preservation of the traditional definition of marriage

Defendants correctly argue that throughout our nation's history, a "traditional" marriage has typically been an agreement between one man and one woman.[93] However, "[a]ncient lineage of a legal concept does not give it immunity from attack" under the appropriate standard of review.[94] Adherence to tradition is not a valid basis for taking away an individual's constitutional rights, particularly when experience reveals that the injustice no longer serves, or even acts as a detriment to, the general welfare.[95] In regard to a parallel argument concerning tradition brought by the state in *Baskin*, the Seventh Circuit explained:

> The state's argument from tradition runs head on into *Loving v. Virginia*, since the limitation of marriage to persons of the same race was traditional in a number of states when the Supreme Court invalidated it. Laws forbidding black-white marriage dated back to colonial times and were found in northern as well as southern colonies and states. Tradition per se has no positive or negative significance. There are good traditions, bad traditions pilloried in such famous literary stories as Franz Kafka's "In the Penal Colony" and Shirley Jackson's "the Lottery," bad traditions that are historical realities such as cannibalism, foot-binding, and suttee, and traditions that from a public-policy standpoint are neither good nor bad (such

---

[93] Dkt. 31 at 26.

[94] *Heller*, 509 U.S. at 326.

[95] *See Wolf v. Walker*, 986 F.Supp.2d 982, 1019 (W.D. Wis. 2014), *aff'd*, *Baskin*, 2014 WL 4359059 ("The rejection of these inequalities by later generations shows that sometimes a tradition may endure because of unexamined assumptions about a particular class of people rather than because the laws serve the community as a whole.").

as trick-or-treating on Halloween). Tradition per se therefore cannot be a lawful ground for discrimination—regardless of the age of the tradition.[96]

As previously discussed, the traditional notion of marriage as described by the Supreme Court is comprised of two individuals that make the deeply personal choice to dedicate their lives to each other. It is a union that acts as a benefit to society and is defined by commitment, intimacy, autonomy, and personal dignity. Many same-sex couples, the Plaintiffs among them, desperately wish to enter into such a legally valid lifelong relationship, and they devote substantial time, energy, and money to have the state recognize their commitment.

While the state and its citizens may indeed have a legitimate interest in promoting certain virtues, it does not follow that a law forbidding same-sex marriage has any relation to the status of male-female marriage. Presented with unsupported arguments about the future effects of same-sex marriage on traditional marriage, the Ninth Circuit stated:

> Unsupported legislative conclusions as to whether particular policies will have societal effects of the sort at issue in this case—determinations which often, as here, implicate constitutional rights—have not been afforded deference by the Court. To the contrary, we "retain an independent constitutional duty to review factual findings where constitutional rights are at stake…." [T]here is no empirical support for the idea that legalizing same-sex marriage would harm—or indeed affect—opposite sex marriages or relationships.[97]

Just as in *Latta*, the Defendants have provided the Court with little more than uncorroborated suggestions about the impact of same-sex marriage. Without persuasive factual findings to evaluate, the Court finds that there is inadequate support for the contention that banning same-sex marriages has any rational relationship to the preservation of traditional marriages.

---

[96] *Baskin*, 2014 WL 4359059, at *14 (internal citation omitted).

[97] *Latta,* 2014 WL 4977682, at *17, *18 (quoting *Gonzalez v. Carhart*, 550 U.S. 124, 165-66 (2007)).

3. Child-rearing

Defendants further mention the notion that "it is legitimate for voters to believe that children can prosper with a father and a mother in their lives—because they derive unique values from each parent" and that the state seeks "to ensure that all children have the best chance to grow in a stable environment by supporting families."[98]  Again, these contentions are unsupported by empirical evidence.[99]  As the Ninth Circuit found, "[r]aising children is hard; marriage supports same-sex couples in parenting their children, just as it does opposite-sex couples."[100]

For the many same-sex couples with children in the United States today, permitting them to enter into marriage encourages security and stability in their family and for their children.  It is estimated that 23% of same-sex couples in Alaska are raising children (biological, adopted, or step-children), the third highest percentage in the nation.[101]  Preventing these individuals from participation in marriage places upon them unwarranted social, economic, and political burdens and prevents them from obtaining the extensive benefits and protections that are provided to families of opposite-sex couples.[102]  Discussing the states' arguments regarding procreation and child-rearing, the Ninth Circuit in *Latta* found:

---

[98]  Dkt. 31 at 26.

[99]  *See, e.g.,* "Lesbian and Gay Parenting." (American Psychological Association), http://apa.org/pi/lgbt/resources/parenting.aspx?item=6 (last visited October 11, 2014) ("[E]vidence to date suggests that home environments provided by lesbian and gay parents are as likely as those provided by heterosexual parents to support and enable children's psychological growth.").

[100]  *Latta*, 2014 WL 4977682, at *22.

[101]  "Six Million American Children and Adults Have an LGBT Parent." (Williams Institute, UCLA School of Law, Feb. 2013), http://williamsinstitute.law.ucla.edu/wp-content/uploads/LGBT-Parenting.pdf.

[102]  *See* Plaintiffs' affidavits at Dkts. 21-26.

23

> In extending the benefits of marriage only to people who have the capacity to procreate, while denying those same benefits to people who already have children, Idaho and Nevada materially harm and demean same-sex couples with children…. Denying children resources and stigmatizing their families on this basis is "illogical and unjust."… It is counterproductive, and it is unconstitutional.[103]

A more effective way to support the state's interest in building strong, supportive families with children would be to allow same-sex couples the same public resources as heterosexual couples have for creating and nurturing a family.[104] There is no sensible reason to deny same-sex families the same advantages and benefits already given to opposite-sex couples.

In sum, any relationship between Alaska's same-sex marriage laws and the government interests asserted by Defendants is either nonexistent or purely speculative. Alaska's same-sex marriage laws are a prime example of how "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational."[105] Refusing the rights and responsibilities afforded by legal marriage sends the public a government-sponsored message that same-sex couples and their familial relationships do not warrant the status, benefits, and dignity given to couples of the opposite sex. This Court finds that Alaska's same-sex marriage laws violate the

---

[103] *Latta*, 2014 WL 4977682, at *25 (internal citation omitted) (quoting *Plyler v. Doe*, 457 U.S. 202, 220 (1982)).

[104] *See, e.g*., Press Release, American Academy of Pediatrics, American Academy of Pediatrics Supports Same Gender Civil Marriage (March 21, 2013) (available at: http://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/American-Academy-of-Pediatrics-Supports-Same-Gender-Civil-Marriage.aspx) ("The American Academy of Pediatrics (AAP) supports civil marriage for same-gender couples—as well as full adoption and foster care rights for all parents, regardless of sexual orientation—as the best way to guarantee benefits and security for their children.").

[105] *Vance v. Bradley*, 440 U.S. 93, 97 (1979).

Due Process and Equal Protection Clauses of the Fourteenth Amendment because no state interest provides "exceedingly persuasive justification"[106] for the significant infringement of rights that they inflict upon homosexual individuals.

## V. CONCLUSION

Any state interests identified by Defendants are insufficient for Alaska's same-sex marriage laws to pass constitutional muster under due process or equal protection. Plaintiffs' Motion for Summary Judgment at Docket 20 is **GRANTED**.

With this ruling, the Court hereby **DECLARES** that Alaska's same-sex marriage laws are unconstitutional for violating the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

The Court **IMMEDIATELY ENJOINS** the state of Alaska, including state officers, personnel, agents, government divisions, and other political entities, from enforcing Alaska Constitution Article 1, Section 25 and Alaska Statute Sections 25.05.011 and 25.05.013 to the extent that the laws prohibit otherwise qualified same-sex couples from marriage and refusing to recognize lawful same-sex marriages entered in other states.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 12th day of October, 2014.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[106] *Virginia*, 518 U.S. at 531.

25