IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| MATTHEW HAMBY; et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>BILL WALKER, in his official capacity as Governor of Alaska; et al.,<br><br>        Defendants. | Case No. 3:14-cv-00089-TMB<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES & EXPENSES THROUGH OCTOBER 24, 2014 |

## I. INTRODUCTION

Plaintiffs brought this action against Defendants for violations of 42 U.S.C. § 1983, claiming that Alaska's laws prohibiting same-sex marriage and the recognition of same-sex marriages lawfully entered in other states violate the Fourteenth Amendment of the United States Constitution.[1] On October 12, 2014, the Court granted summary judgment in favor of Plaintiffs, declaring the laws unconstitutional.[2] Plaintiffs, by and through their attorneys, move under 42 U.S.C. § 1988 for an award of $257,938.40 in attorneys' fees and expenses incurred from the start of litigation through October 24, 2014.[3] Defendants claim that the sum sought by Plaintiffs is excessive and unreasonable.[4] For the following reasons, Plaintiffs' motion at **Docket 46** is **GRANTED in part** and **DENIED in part**.

---

[1] Dkt. 1.

[2] Dkt. 38.

[3] Dkt. 46; 47 at 2. As explained *infra*, the fee calculation in Plaintiffs' motion included 246.3 hours of work for attorney Caitlin Shortell for a total of $257,938.40. The hours were miscalculated and Shortell later amended her affidavit for a total of 180.5 hours.

[4] Dkt. 56.

## II. BACKGROUND

This case proceeded quickly. Plaintiffs filed their complaint on May 12, 2014.[5] The parties filed cross motions for summary judgment in August and September; the Court heard oral arguments on the dispositive motions on October 10, 2014.[6] Two days later, the Court granted summary judgment in favor of Plaintiffs.[7] Defendants immediately moved for a stay of the Court's order pending appeal; the Court denied the motion on October 14, 2014 and entered a judgment for Plaintiffs, declaring that the challenged Alaska laws violate the Fourteenth Amendment of the United States Constitution and permanently enjoining their enforcement.[8] Defendants appealed and sought a stay of the Court's judgment from the Ninth Circuit Court of Appeals. The Ninth Circuit granted the stay to afford Defendants the opportunity to seek a stay from the United States Supreme Court.[9] The Supreme Court denied the stay on October 17, 2014.[10]

On October 28, 2014, Plaintiffs filed the present motion for attorneys' fees and costs in the sum of $257,938.40, which includes 788 hours of work from four attorneys and legal support staff.[11] Defendants contest the sum calculated by Plaintiffs on the grounds that: (1) the case did not present a novel claim and was decided on motions for summary judgment; (2) the time

---

[5] Dkt. 1.

[6] Dkt. 20 (Plaintiffs' Motion for Summary Judgment); Dkt. 31 (Defendants' Opposition and Cross-Motion for Summary Judgment).

[7] Dkt. 38.

[8] Dkt. 40 (Motion to Stay); Dkt. 43 (Judgment); Dkt. 44 (text order denying Motion to Stay).

[9] Dkt. 45.

[10] The Supreme Court order denying a stay can be found at: http://cdn.ca9.uscourts.gov/datastore/general/2014/10/17/14A413%20Order.pdf.

[11] Dkt. 46.

records provided by Plaintiffs contain significant errors; (3) the asserted hourly billing rates are excessive; and (4) the claimed number of hours is excessive.[12] Defendants do not contest the $458.40 in costs.

### III. LEGAL STANDARD

42 U.S.C. § 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[13] Absent statutory restrictions, the prevailing party recovers the attorney's fee "unless special circumstances would render such an award unjust."[14] To fulfill the purpose of § 1988, a "reasonable" fee award is one that will encourage competent attorneys to take on meritorious civil rights claims "in order to ensure that federal rights are adequately enforced"[15] without yielding a windfall to either party.[16]

The Court typically employs the "lodestar" method to determine a fee award, which is calculated by multiplying "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."[17] The prevailing party bears the burden of presenting "satisfactory evidence" of the prevailing market rate and detailed time records documenting the number of hours expended on litigation.[18] When reviewing the time records, the Court must decide whether the hours are adequately documented and whether any hours should be excluded

---

[12] Dkt. 56 at 2-3.

[13] 42 U.S.C. § 1988(b).

[14] *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

[15] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).

[16] *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

[17] *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).

[18] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

for being "excessive, redundant, or otherwise unnecessary."[19] When the lodestar figure is properly calculated and supported by satisfactory evidence, the sum is presumed to represent a reasonable fee under § 1988.[20]

Nonetheless, the Court may adjust the loadstar figure upward or downward based on factors set forth in *Kerr v. Extras Guild, Inc.*, including: (1) the time and labor required to litigate the case, (2) the complexity of the case, (3) the skill required for the attorney(s) to provide effective legal counsel on the issue, (4) whether the attorney(s) turned down other employment opportunities due to accepting the case, (5) time limitations imposed by the court or client, (6) the results obtained, (7) the experience, ability, and reputation of the attorney(s) involved in the case, (8) the undesirability of the case, and (9) awards in similar cases.[21] Some of these factors may be subsumed by being "taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation."[22]

## IV. DISCUSSION

Plaintiffs seek fees for four attorneys and the supportive staff who contributed to the case: Allison Mendel, $425 per hour for 89.5 hours; Caitlin Shortell, $395 per hour for 180.5 hours;[23] Heather Gardner, $395 per hour for 230.2 hours; Laurence Blakely, $200 per hour for 112 hours;

---

[19] *Hensley*, 461 U.S. at 433-34.

[20] *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

[21] 526 F.2d 67, 70 (9th Cir. 1975).

[22] *Morales v. City of Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996).

[23] Shortell's original affidavit miscalculated a sum of 246.3 hours (Dkt. 49). Her amended affidavit asserts a sum of 180.5 hours (Dkt. 59).

4

and paralegal staff, $125 per hour for 110.6 hours.[24] Plaintiffs also seek a $400 filing fee and a $58.40 PACER fee for an additional $458.40 in costs and other expenses.[25]

### A. Complexity and Novelty of the Issue

Defendants first argue that the attorneys' fees sought are unreasonable because, "although this case involved complex constitutional analysis, it hardly presented a novel claim."[26] Since numerous courts across the country have been engaged in similar litigation, Defendants assert that Plaintiffs had a "clear roadmap" for pursuing their claim.[27] Indeed, the claim is not entirely novel: in the last decade, state laws restricting or prohibiting same-sex couples' access to legal marriage and marriage recognition have been the focus of debates in state and federal courtrooms across the nation.

During the complaint and briefing stages of this case, the legal landscape regarding the constitutionality of state bans on same-sex marriage was changing day to day and the parties were required to monitor and keep informed of these changes and adjust their arguments accordingly. But Plaintiffs were not without guidance in this forum: the issue had been or was being litigated in numerous federal courts across the nation, including in cases from six of the eight other states in this Circuit.[28] The Tenth and Fourth Circuits had already issued decisions

---

[24] Dkt. 47 at 5.

[25] *Id.* at 11. 42 U.S.C. § 1988(b) permits the prevailing party to collect costs that would normally be billed to fee-paying clients.

[26] Dkt. 56 at 4.

[27] *Id*.

[28] *See Majors v. Horne,* 14 F.Supp.3d 1313 (D. Ariz. 2014); *Brenner v. Scott,* 999 F.Supp.2d 1278 (N.D. Fla. 2014); *Jackson v. Abercrombie,* 282 F.R.D. 507 (D. Haw. 2012); *Latta v. Otter,* 19 F.Supp.3d 1054 (D. Idaho 2014); *Love v. Beshear,* 989 F.Supp.2d 536 (W.D. Ky. 2014); *DeBoer v. Snyder,* 973 F.Supp.2d 757 (E.D. Mich. 2014); *Rolando v. Fox,* 23 F.Supp.3d 1227 (D. Mont. 2014); *Sevcik v. Sandoval,* 911 F.Supp.2d 996 (D. Nev. 2012); *Geiger v. Kitzhaber,* 994 F.Supp.2d 1128 (D. Or. 2014); *Whitewood v. Wolf,* 992 F.Supp.2d 410 (M.D. Pa. 2014); *DeLeon v. Perry,* 975 F.Supp.2d 632 (W.D. Tex. 2014); *McGee v. Cole,* 2014 WL 321122 (S.D. W. Va. Jan. 29., 2014).

5

on the matter in favor of the Plaintiffs' position[29] and the district court decisions from Idaho, Hawaii, and Nevada declaring the unconstitutionality of same-sex marriage bans similar to Alaska's were pending before the Ninth Circuit.[30] As the Plaintiffs admit in their opening brief:

> [T]he vast majority of courts to consider the issue have ruled that state laws barring same-sex couples from marriage or refusing to recognize their existing marriages are invalid, including the Fourth and Tenth Circuit Courts of Appeals, fourteen federal district courts, and three state courts.[31]

In short, Plaintiffs were aware of the many courts addressing the issue and had the benefit of these cases and the arguments propounded therein during the briefing of this case.

Furthermore, the core of Plaintiffs' claims rested on the Fourteenth Amendment and the right to equal protection under the laws: concepts hardly new to the federal court system. The Plaintiffs' arguments—which paralleled arguments presented in other federal courts—primarily relied upon cases which have been the subject of legal arguments on the rights of same-sex couples well before this case was filed. In particular, Plaintiffs heavily relied upon *United States v. Windsor*, the Supreme Court decision issued on June 26, 2013 striking down part of the federal Defense of Marriage Act ("DOMA").[32] This landmark decision cleared the way for advocates of same-sex marriage in the federal forum. Plaintiffs' argument also hinged upon the Ninth Circuit decision in *Smithkline Beecham v. Abbott Laboratories*, issued on January 21, 2014, and providing that, in light of *Windsor*, "heightened scrutiny" is the appropriate standard of review

---

[29] *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014).

[30] In *Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014), the Ninth Circuit affirmed the rulings of the district courts in Idaho, Hawaii, and Nevada that declared the states' same-sex marriage bans unconstitutional. The decision was issued on October 7, 2014, three days before oral arguments in this case and after the parties submitted their briefs.

[31] Dkt. 20 at 10.

[32] 133 S.Ct. 2675, 2692 (2013); Dkt. 20 at 1-3, 15-17, 20, 23, 27-28, 30, 35-36, 38-39, 42.

6

when laws discriminate based on sexual orientation.[33] The Ninth Circuit's directive to use heightened scrutiny on this issue further supported the success of Plaintiffs' argument.

Additional Supreme Court cases often cited by Plaintiffs in support of their arguments date back more than a decade, such as *Lawrence v. Texas*, issued in 2003, striking down Texas' anti-sodomy law,[34] *Zablocki v. Redhail*, issued in 1978, reaffirming the status of marriage as a fundamental right,[35] and *Loving v. Virginia*, issued in 1967, invalidating laws prohibiting interracial marriage.[36] Plaintiffs may not have had a "clear roadmap" to victory in this case, but the fact that Plaintiffs' allegation was previously raised in numerous courts and supported by well-established law is relevant to the Court's calculation of a reasonable award in this case.

**B. Hourly Billing Rates**

A reasonable billing rate for purposes of determining a fee award is "an hourly rate that is based on the 'prevailing market rates in the relevant community.'"[37] The relevant community is generally the forum in which the Court sits.[38] Within this community, the Court looks to "the prevailing hourly rate…for work that is similar to that performed in this case, by attorneys with the skill, experience, and reputation comparable to that of [Plaintiffs'] attorneys."[39] The Plaintiffs bear the burden of producing satisfactory evidence of the prevailing market rate.[40]

---

[33] 740 F.3d 471, 481-84 (9th Cir. 2014); Dkt. 20 at 3, 23-27, 39.

[34] 539 U.S. 558 (2003); Dkt. 20 at 15, 17, 30, 37, 42.

[35] 434 U.S. 374 (1978); Dkt. 20 at 1, 10, 13-15, 24, 36.

[36] 388 U.S. 1 (1967); Dkt. 20 at 1, 3, 10-11, 13, 17, 32, 35.

[37] *Gonzalez*, 729 F.3d at 1200 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)).

[38] *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

[39] *Camacho*, 523 F.3d at 980-81.

[40] *Id.* at 980.

7

"Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases…are satisfactory evidence of the prevailing market rate."[41] However, affidavits submitted only by the Plaintiffs' attorneys and not by other attorneys in the community "do not conclusively establish the prevailing market rate."[42]

1. *Plaintiffs' fail to provide satisfactory evidence of the prevailing market rate*

In support of the reasonableness of their hourly rates, Plaintiffs filed: affidavits of Mendel and Blakely from the law firm Mendel & Associates, Inc.;[43] affidavits of solo practitioners Gardner and Shortell who assisted with the case;[44] the *Laffey* matrix used in the D.C. Circuit and elsewhere as a guide to calculating attorney's fees; and a Request for Proposals from the State of Alaska offering to hire a bankruptcy attorney for an hourly rate between $320 and $380.[45] Since the *Laffey* matrix represents hourly rates for lawyers in Washington, D.C., the Court does not find it helpful for assessing the rates in Anchorage, Alaska.[46] The Request for Proposals may give a general idea of a fee the State of Alaska finds reasonable for hiring an attorney, but is not indicative of the prevailing market rate in the community.

The remaining evidence provided by Plaintiffs are declarations of the primary attorneys who participated in the litigation of this case. The four attorneys describe the number of years they

---

[41] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

[42] *Camacho*, 523 F.3d at 980.

[43] Dkt. 48 (The Affidavit of Laurence Blakely at Docket 48 is appended with "Exhibit B," the Affidavit of Alison Mendel).

[44] Dkts. 50 (Affidavit of Heather Gardner); 59 (Affidavit of Caitlin Shortell).

[45] Dkts. 48, 50, 58, 59.

[46] *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("[J]ust because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away."). Even if the Court accepted the *Laffey* matrix as indicative of a prevailing market rate in Anchorage, Plaintiffs' rates for Shortell and Gardner are still in excess.

have been practicing law, their job experience, the type of legal work they have performed in the past, and other relevant information to indicate their reputation. Mendel, Shortell, and Gardner declare that the hourly rates used in their calculations are reasonable within Alaska given their level of expertise.[47] Mendel appears particularly qualified to litigate this matter in light of the quantity, quality, duration, and diversity of Mendel's experience, especially in the field of LGBT rights.[48] Shortell and Gardner have substantially less experience, but indicate considerable previous litigation practice in a variety of fields including domestic matters.[49] Both Shortell and Gardner also have experience working in the office of the Alaska Attorney General and in private and solo practices.[50] Blakely, only recently admitted to the bar, confirmed that Mendel & Associates, Inc. charges $425 per hour for Mendel's civil litigation work, $200 per hour for associate attorney work (including that of Blakely), and $125 for paralegal work.[51]

Plaintiffs failed, however, to provide a single declaration of an attorney unrelated to the present proceedings. In *Blum*, the United States Supreme Court emphasized that "the burden is

---

[47] Dkts. 48 at 22; 50 at 4-5; 59 at 4-5.

[48] Dkt. 48 at 18-19. Mendel's background includes mention that she has practiced law since 1982; is a member in good standing of the state bars of Alaska, California, and Washington; clerked on the Alaska Supreme Court and the Ninth Circuit Court of Appeals; is an activist and speaker for LGBT rights and has litigated issues related to same-sex partners and their children in trial and appellate courts; is a member of the National LGBT Bar Association (for 20 years) and the National Family Law Advisory Council; and has been named a "Super Lawyer" in the field of family law in Alaska in 2007, 2009, 2011, and 2013.

[49] Dkt. 50 at 2 (Shortell began practicing law in Alaska in 2004); 59 at 2 (Gardner was admitted to the Alaska bar in 2001).

[50] *Id.* Shortell's experience includes clerking on the Anchorage Superior Court, working as an assistant attorney general, becoming a Human Rights Advocate in 2008, leading cases involving discrimination, retaliation, and harassment, and opening a solo practice focusing on a variety of civil litigation. Gardner's experience includes working as an assistant attorney general focusing on child protection litigation, working at a multistate plaintiffs' firm on cases involving medical malpractice, ERISA, and personal injury, and opening a solo practice focusing on domestic matters.

[51] Dkt 48 at 2.

on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[52] To substantiate the claim that the fees requested in this case were reasonable, Plaintiffs must provide at least some corroborating evidence of the prevailing market rate for similar attorneys doing similar work in the Anchorage area. For example, in *Welch v. Metropolitan Life Inc. Co.*, the fee applicants provided satisfactory evidence of the prevailing market rate in the community by submitting: (1) rate determinations in other cases litigated by the law firm awarding fees in line with the requested rates, and (2) declarations from comparable attorneys in the same area of law attesting to the market rate in the community for similar work.[53] When the fee applicant fails to produce such satisfactory evidence, the Ninth Circuit has permitted district courts to limit the hourly rates requested.[54]

Here, the Court is unreasonably asked to rely solely upon Plaintiffs' attorneys' affidavits to justify a determination that the requested rates are appropriate. "[T]he proper reference point for determining an appropriate fee award is the rates charged by private attorneys in the same legal market as prevailing counsel."[55] Since Plaintiffs failed to produce evidence of the prevailing market rate in this community, the Court is left without such a reference point. The Court

---

[52] *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984) (emphasis added).

[53] 480 F.3d 942, 947 (9th Cir. 2007).

[54] *See Carson v. Billings Police Dept.*, 470 F.3d 889, 891-92 (9th Cir. 2006) (the district court did not err in awarding an hourly rate of $150 per hour instead of the requested rate of $205 per hour because "Plaintiff's counsel submitted no evidence of what the 'prevailing market rate' in Montana was" aside from his own affidavit and affidavits from other lawyers stating that he "deserved" the rate he requested); *Barjon,* 132 F.3d at 502 (district court appropriately awarded an hourly rate of $200 instead of the requested rate of $250 because the evidence submitted by the fee applicants — namely that attorneys in past cases were awarded rates of $250 per hour — was unpersuasive of the prevailing market rate).

[55] *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996).

recognizes the importance of encouraging capable attorneys to take on public interest cases that may otherwise never be litigated. But without satisfactory evidence of the prevailing market rate for similar attorneys providing similar services in this legal market, the Court is unable to conclude that Plaintiffs' requested rates reasonably reflect the prevailing market rate.

2. *Additional evidence to assess whether Plaintiffs' hourly rates are representative of the prevailing market rate in this community*

"The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the…facts asserted by the prevailing party in its submitted affidavits."[56] To contest the reasonableness of Plaintiffs' attorneys' fees, Defendants argue that in 2010, the Alaska Attorney General approved market rates for attorneys of various experience that should not exceed $225.00 per hour.[57] Specifically, Defendants describe a three-tiered system based on attorney qualifications that establishes rates for fairly reimbursing the state for its legal services as follows: $150 per hour for entry level professionals referred to as Attorneys I and II; $200 per hour for Attorneys III and IV; and $225 per hour for Attorneys V and VI.[58] Defendants state that the figure was derived from a survey based on recommendations of a "working group" at the Alaska Department of Law "to determine fair and reasonable attorney billing rates in Alaska."[59] The Court has been unable to find the

---

[56] *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

[57] Dkt. 56 at 6.

[58] *Id*.

[59] *Id*.

11

report or otherwise verify its recommendations from five years ago, but will consider the figures alongside the Plaintiffs' affidavits.[60]

Without adequate evidence to validate the Plaintiffs' requested rates, the Court looks to awards from cases in other districts that have dealt with the same constitutional challenge for additional guidance. In the case striking down Kentucky's same-sex marriage ban, the District Court for the Western District of Kentucky awarded fees to the prevailing plaintiffs at a rate of $250 per hour.[61] In the District Court for the District of Oregon, the parties in one of the two same-sex marriage cases stipulated to an award of $350 per hour for the lead attorney with the most experience, $300 per hour for the second most experienced attorney, and $175 per hour for the most novice attorney.[62]

In *Latta v. Otter*, the case from the District of Idaho that was affirmed by the Ninth Circuit, the Court awarded the lead attorney a rate of $400 per hour based on her 28 years of civil litigation experience, her strong reputation and leadership roles in the legal community, and the complexity of the case.[63] Another attorney with a 17-year legal career focused on litigation and a solo practice focusing on civil rights was awarded $325 per hour. The court also awarded $275 per hour for a staff attorney with a 13-year legal career focused on civil rights and experience working on challenges to same-sex marriage bans in other states. The least experienced attorney,

---

[60] It appears that this tiered system is intended to represent the fair market rate charged by the Department of Law for the legal services of its attorneys. Nonetheless, the research conducted by the working group included billing rates used statewide by other government agencies as well as private practitioners.

[61] *Love*, 989 F.Supp.2d 536 ("Memorandum Opinion" on motion for attorney fees at Docket 85 can be found at: http://cases.justia.com/federal/district-courts/kentucky/kywdce/3:2013cv00750/86567/85/0.pdf?ts=1411545978).

[62] *Geiger*, 994 F.Supp.2d 1128 ("Order Granting Stipulated Motion for Attorney Fees" at Docket 146 can be found at: https://cases.justia.com/federal/district-courts/oregon/ordce/6:2013cv01834/114233/146/0.pdf?ts=1408538541).

[63] *Latta*, 19 F.Supp.3d 1054 ("Memorandum Decision and Order" at Docket 139 on motion for attorney fees can be found at: http://www.plainsite.org/dockets/download.html?id=209005568&z=18c337cd).

a staff attorney with experience in civil litigation and LGBT advocacy and who had been a judicial clerk, received a fee of $175 per hour. In support of their request, the prevailing plaintiffs submitted declarations to the court from the three lead attorneys on the case as well as from two experienced attorneys in the community not involved in the case who opined that the hourly rates requested were reasonable for similar work performed by attorneys of comparable skill and experience in the Boise market. The declarations from the two independent attorneys were critical to the court's analysis of whether the Plaintiffs' requested rates were reasonable and in line with the prevailing market rate in that community.

For additional guidance, the Court looks to fees awarded in recent cases within the state of Alaska. Experienced attorneys who have obtained successful results for their clients typically received awards consistent with the above cases, ranging from $185 to $300 per hour, depending on the attorney's level of expertise.[64] In a recent civil case from this district, *Horton v. Tesoro Alaska Co.*, the court awarded a rate of $300 per hour for the Plaintiff's counsel based on thirty-six years of litigation experience.[65] Noting several cases where the Ninth Circuit previously held that $300 per hour for ERISA counsel was a reasonable rate, the court in *Horton* found that $300 reasonably reflected the prevailing market rate in this community for similar work.[66] These cases do not conclusively establish the prevailing market rate in this community, but due to the lack of evidence submitted on this issue, they assist the Court in making a more informed decision on the matter.

---

[64] *See Avila v. Pediatrix Medical Group, Inc.*, No. 3:10–cv–00119, 2014 WL 1569502 (D. Alaska April 16, 2014); *Nielson v. Alaska Trustee*, LLC, No. 3:10–CV–132, 2010 WL 3940716 (D. Alaska Oct. 6, 2010); *Anchorage Sch. Dist. v. D.S.*, No. 3:08–cv–0142, 2009 WL 5908718 (D. Alaska Sept. 22, 2009); *Krone v. State, Dept. of Health & Social Serv.*, 222 P.3d 250 (Alaska 2009).

[65] Case No. 3:10-cv-171 (D. Alaska filed July 23, 2010).

[66] *Id*.

3. *Hourly rates awarded to Plaintiffs' attorneys*

Considering the evidence submitted, the rates awarded in similar cases for attorneys with similar levels of legal experience, skill, and reputation, and the Court's own knowledge of the legal market in this community,[67] the Court finds that the rates requested by Mendel, Shortell, Gardner, and Blakely are in this instance too high. Mendel's experience is similar to that of the lead attorney in *Latta* who received $400 per hour: both have many years of experience in litigation in their respective states, have strong reputations within their legal communities, and led legal teams that reached a great level of success for their clients and the public. However, the court in *Latta* had the benefit of independent attorneys' declarations to justify that rate as being in line with the prevailing market rate in the community. Without the same benefit in this case, and in light of the considerations discussed *supra*, a fee of $375 per hour is more reasonable for Mendel's work on this case.

Shortell and Gardner have substantially less experience than Mendel and should receive an hourly rate that better reflects their level of expertise. While Shortell and Gardner have some experience in litigation and domestic matters generally, neither indicated any specific experience working on LGBT issues or engaging in LGBT advocacy before this case developed. In contrast, the staff attorney from *Latta* who worked specifically on civil rights issues for 13 years and had experience working on multiple same-sex marriage cases in other states received a fee award of $275 per hour. In *Love*, the attorneys appearing most similar to Shortell and Gardner were awarded only $250 per hour. The Court is mindful that both Shortell and Gardner are solo practitioners and declared in their affidavits the substantial risk they took by agreeing to represent the Plaintiffs and the fact that they turned away other work to focus on this case. In

---

[67] *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (Explaining that the district court judge may also rely upon its own familiarity with the legal market in the community in determining a reasonable hourly billing rate).

consideration of the available evidence, $250 per hour is a reasonable fee for Shortell and Gardner.

Lawrence Blakely has the least experience of the four main attorneys; she was admitted to the Alaska bar in 2009 and began work as an associate in 2011. In light of the fees awarded to Mendel, Shortell, and Gardner for their levels of experience and expertise, a fee of $175 per hour is reasonable for Blakely. Finally, the rate requested for the paralegal staff, $125 per hour, appears consistent with the prevailing market rates for similar work for legal counsel with similar experience and is therefore reasonable in this case.

### C. Number of Hours Claimed

The second step of the loadstar analysis requires the Court to determine how many hours the attorneys "reasonably expended in pursuit of the ultimate result achieved."[68] The Court typically looks to Plaintiffs' billing records to evaluate the reasonableness of the hours spent on a case.[69] In addition to the attorneys' signed and sworn affidavits, Plaintiffs provided an itemized list of time and expenses spent by attorneys and paralegals at Mendel & Associates, Inc. from the beginning of the case through October 24, 2014[70] and contemporaneous time records from Gardner and Shortell documenting their hours expended on litigation.[71]

"[A] 'reasonable' number of hours equals '[t]he number of hours…[which] could reasonably have been billed to a private client.'"[72] When reviewing the attorneys' billing records, the Court

---

[68] *Hensley,* 461 U.S. at 431.

[69] *Gonzales,* 729 F.3d at 1202 (citing *Democratic Party of Wash. v. Reed,* 388 F.3d 1281, 1287 (9th Cir. 2004)).

[70] Dkt. 48 at 5-16 ("Exhibit A": Mendel & Associates, Inc. time record).

[71] Dkts. 50 at 6-9 ("Exhibit A": Heather Gardner's time record); 59-1 (Caitlin Shortell's time record).

[72] *Hensley,* 461 U.S. at 431 (quoting *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008)).

15

may reduce the number of hours claimed "where documentation of the hours is inadequate; if the case was overstaffed and hours were duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary."[73]

The Court is inclined to agree with Defendants' contention that 788 hours of work from a legal team of four attorneys and supportive staff is unreasonable given that the case was decided on motions for summary judgment and that similar motions were filed and granted by numerous district courts around the country.[74] Additionally, the level of expertise of the main attorneys on the case—reflected in the substantial hourly rates determined above—further suggests that 788 hours of work for a case decided on dispositive motions is excessive.

The billing records provided by Plaintiffs include time spent on the following tasks: reviewing, analyzing, researching, drafting, and editing briefs; various communication with co-counsel, opposing counsel, and clients; conferences to discuss legal theories, brief preparation, and client meetings; and preparing for oral arguments.[75] The Court finds that these tasks were necessary in order for counsel to effectively litigate the action. However, the documented hours corresponding to each task appear at times to be excessive, redundant, or otherwise unnecessary; there appears to be an inordinate amount of time spent by multiple attorneys conducting the same tasks, which indicates duplicative efforts. This is particularly evident in the billing records of Shortell and Gardner. Shortell's billing record shows at least 40 entries totaling over 60 hours described as meetings with Gardner.[76] Gardner documented approximately 46 entries totaling

---

[73] *Id*. at 433-34.

[74] Dkt. 56 at 7.

[75] Dkts. 48 at 5-16 ("Exhibit A"); 50 at 6-9 ("Exhibit A"); 59-1.

[76] Dkt. 50 at 6-9.

over 80 hours described as meetings with Shortell.[77] These meetings indicate repeated discussions over the same topic and some lack any explanation as to what the meetings concerned.

Moreover, billing records for all of the attorneys frequently lack an adequate description of the work performed. In particular, the three billing records indicate voluminous meetings, emails, and telephone calls, but fail to state the nature of the communication. For example, when listing communication via emails, phone calls, and conferences, the billing records often state "emails with [co-counsel]" or "conference with [co-counsel]" without additional information. Other entries indicate the general content or purpose of those communications and support their reasonableness. The lack of specificity for some entries, however, frustrates the Court's ability to effectively assess whether the time spent on those tasks was reasonable or necessary.

Most importantly, after reviewing the billing records, it also appears that Defendants correctly state that Plaintiffs spent well over 300 hours working on and editing the drafts of the motion for summary judgment and the subsequent reply. In fact, this may be a modest estimate. The Court is mindful of the complexity of this issue, but questions whether this many hours "could reasonably have been billed to a private client." [78] The Court is particularly wary of the number of hours claimed given the large, diverse legal staff working on the case, the lead attorney's knowledge of LGBT legal issues and the supporting attorneys' extensive experience in domestic matters, and the existence of the same legal arguments in cases across the nation.

As discussed *supra*, this case did not present an entirely novel question, was rooted in well-established law, was decided on dispositive motions without trial or discovery, and was completed in approximately six months. Numerous cases across the county had addressed or

---

[77] Dkt. 59-1.

[78] *Moreno*, 534 F.3d at 1111.

17

were addressing the same question with parallel legal arguments. Plaintiffs were successful, but as they indicated in the opening of their brief, nearly every court that had considered the issue ruled in their favor. Plus, Plaintiffs had three district court cases within the Ninth Circuit that had already ruled in favor of their position to direct them.

As to specific challenges to the hours for which Plaintiffs seek payment, Defendants argue that there are two errors in the timesheets submitted by Shortell and Mendel. First, Defendants claim that Shortell overstated her hours and so her calculations should be considered unreliable: the individual time entries on her billing record total 180.5 hours, not 246.3 hours as she originally listed in her declaration.[79] After the addition error came to light, however, Shortell submitted an amended affidavit to correct the total number of hours she expended on the case.[80] While Plaintiffs promptly corrected this error, the Court is concerned by the substantial overstatement of hours. Second, Defendants assert that the August 29, 2014 time entry in the billing record for Mendel & Associates, Inc., which indicates a total of 27.1 hours, must be in error.[81] However, the far right column of the document indicates three different individuals completed the work that contributed to that total.[82] Thus, the Court finds no error in this entry.[83]

In light of these circumstances and the above analysis, the Court finds that the time spent by Plaintiffs researching, reviewing, and editing briefs was excessive and not fully compensable.

---

[79] Dkt. 56 at 5.

[80] Dkt. 59 at 5.

[81] Dkt. 56 at 5; Dkt. 48 at 12 ("Exhibit A" at 8).

[82] Id.

[83] See Missouri v. Jenkins, 491 U.S. 274 (1989) (holding that attorneys' fees under § 1988 can include paralegal fees so long as the fees "are consistent with market rates and practices."). Id. at 287-88.

18

Based on this finding, a reduction in hours by 25% is a reasonable but not over-burdensome deduction.

### D. Summary of Attorneys' Fee Awards

The Supreme Court has explained that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988."[84] In short, "the result is what matters."[85] Unlike many cases where the prevailing party achieves only partial success, the Plaintiffs in this case achieved complete success on their claims. The success of a plaintiff is particularly notable in a case brought under § 1983 because "[a] civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in doing so, has vindicated Congress's statutory purposes."[86]

Here, the Plaintiffs undeniably obtained a successful result that served the public interest by vindicating significant constitutional rights. The effective litigation by Plaintiffs' legal counsel not only conferred benefits upon the named Plaintiffs, but also "confer[red] benefits on others throughout society"[87] by allowing same-sex couples to legally marry in Alaska and to have lawful marriages entered into in other states recognized by the State of Alaska. The Court has limited its deductions from Plaintiffs' award due to this success and in order to fulfill the purpose of § 1988 to encourage experienced, uniquely-qualified attorneys to take on meritorious constitutional claims of clients wronged by the government.[88]

---

[84] *Hensley*, 461 U.S. at 440.

[85] *Id.* at 435.

[86] *Fox v. Vice*, 131 S.Ct. 2205, 2214 (2011).

[87] *McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 810 (9th Cir. 1994).

[88] *See Bauer v. Sampson,* 261 F.3d 775 (9th Cir. 2001).

The following table represents the calculation of attorneys' fees based on the rates and hours found by the Court to be reasonable in view of the nature and circumstances of this case:

| Attorney<br>Requested Rate, Hours | Reasonable Rate | Reasonable Hours<br>(deducted by 25% and rounded up to the nearest 1/10 of an hour) | Total |
|---|---|---|---|
| **Allison Mendel**<br>$425, 89.5 hours | $375 | 67.1 | $25,162.50 |
| **Caitlin Shortell**<br>$395, 180.5 hours | $250 | 135.4 | $33,850.00 |
| **Heather Gardner**<br>$395, 230.2 hours | $250 | 172.7 | $43,175.00 |
| **Laurence Blakely**<br>$200, 112 hours | $175 | 84.0 | $14,700.00 |
| **Paralegal Staff**<br>$125, 110.6 hours | $125 | 83.0 | $10,375.00 |

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Plaintiffs' motion at **Docket 46** in the amount of $127,262.50 in attorneys' fees to reflect the reductions as explained in this order and $458.40 in costs and other expenses for a total of **$127,720.90**.

Dated at Anchorage, Alaska, this 15 day of April, 2015.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE