Heather Gardner #0111079
Caitlin Shortell #0405027
Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

MATTHEW HAMBY ET AL.,

                       Plaintiffs,

   vs.

WILLIAM WALKER, ET AL.,

                      Defendants.

Case No. 3:14-cv-00089 TMB

MOTION FOR RECONSIDERATION OF COURT'S ORDER ON MOTION FOR ATTORNEY'S FEES  (42 U.S.C. § 1988) (FRCP § 59(e)

COME NOW Plaintiffs' counsel Caitlin Shortell and Heather Gardner[1] and move

the court for reconsideration of its April 15, 2015 Order on their Attorney's Fees pursuant

to FRCP §59(e).   This motion is supported by attached Declarations of undersigned

counsel Caitlin Shortell, Heather Gardner, and the Declarations of attorneys Lee Holen,

Ken Legacki, and Jessica Hedges.

     I.        <u>BACKGROUND</u>

---

[1]  Allison Mendel is not participating in this motion and undersigned counsel are not authorized to speak for her or to represent her interests or those of her staff in this matter. All references to "counsel" or "undersigned counsel" in this motion refer exclusively to Shortell and/or Gardner.

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-CV- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

1

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 1 of 29

On April 15, 2015, this court partially granted Plaintiffs' Motion for Attorney's Fees pursuant to 42 U.S.C. §1988. The court reduced the award of undersigned counsels' fees from the amounts requested by more than fifty percent. The court reduced the hourly rates requested by all counsel and disallowed a significant number of hours set forth in counsels' declarations. The original motion for fees drafted by Allison Mendel or her associate did not include additional declarations from other counsel in the community, and as a result, the court could not rely upon such declarations. Undersigned counsel Shortell and Gardner apologize for this mistake, and seek to correct it by providing such evidence herein. Even taking the lack of corroborating declarations into account, the court relied upon a number of errors of fact, failed to apply binding Ninth Circuit law on the matter of §1988 fees, and reached a conclusion that defies the purpose of the fee-shifting statute in reducing the award. Accordingly, the court should reconsider its decision to drastically reduce counsels' award for the reasons set forth below.

## II.    LEGAL STANDARDS

The Ninth Circuit has set forth the grounds justifying reconsideration of a judgment under Rule 59(e). There are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly

discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.[2] For the reasons set forth below, reconsideration is warranted.

The factual basis for an award of attorneys' fees is reviewed for clear error, and the order's underlying legal premises are reviewed *de novo*.[3] If there are no clear errors, an award of attorney's fees is reviewed for an abuse of discretion.[4] In cases involving federal fee-shifting statutes, the district court must calculate the lodestar by multiplying number of hours reasonably expended by the reasonable hourly rate.[5] The 9th Circuit generally requires district courts to use the 12 factors outlined in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) to make attorneys' fee determinations. The Kerr factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6)

---

[2] *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).
[3] *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1147-48 (9th Cir. 2001) (per curiam) (citations omitted).

[4] *Ferland, 244 F.3d at* 1148.

[5] *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009)(cit. omitted).

3

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-cv- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 3 of 29

whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.[6] In providing its analysis, the district court must provide more than just a general statement that it considered the *Kerr* factors.

In *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008), the 9th Circuit ruled that the larger the disparity between the attorneys' fee request and the court's award, the "more specific articulation of the court's reasoning is expected." A District court must calculate awards for fees using the 'lodestar method' and the amount of that fee must be determined on the facts of each case.[7] "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."[8] In most cases, the lodestar figure should be considered 'presumptively reasonable' by the District court.[9] To fulfill the purpose of

---

[6] *Quesada v. Thomason*, 850 F.2d 537, 539 n.1. (9th Cir. 1988).

[7] *Ferland*, 244 F.3d at 1149 n.4, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

[8] *Ferland*, 244 F.3d at 1149 n.4 (citation and internal quotation marks omitted).
[9] Id.

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-CV- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 4 of 29

§1988, a "reasonable" fee award is one that will encourage competent attorneys to take on meritorious civil rights claims "in order to ensure that federal rights are adequately enforced"[10] without yielding a windfall to either party.[11]

In order to assess the reasonableness of an hourly rate, the 9th circuit court of appeals has held that the district court must look to the prevailing rate of other attorneys of similar skill, experience, and reputation in the relevant community,[12] which is the federal district in which the case was brought.[13] The applicants for fees bear the burden of producing affidavits to show that their requested hourly rate is within the range for attorneys of similar experience, and reputation in the same district.[14] This evidence can include the applicants' own affidavits, the affidavits of other attorneys in the same district, and fee determinations in other cases.[15] The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court

---

[10] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).

[11] *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546*, 565 (1986).*

[12] *Barjon v. Dalton*, 132 F.3d 496, *132 F.3d 496, 502 (9th Cir. 1997).*

[13] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

[14] *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

[15] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

5

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-cv- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 5 of 29

challenging the accuracy and reasonableness of the facts asserted by the prevailing party in its submitted affidavits.[16]

A district court errs when it fails to consider evidence as to the market rate for attorneys of like experience, skill, and reputation in the same federal district, as in *Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008).*[17] The 9th Circuit also instructs district courts to compare requested fees solely in comparison to cases brought under the identical statute or on identical subject matter, but instead in comparison to the fees commensurate to the fees the applicants could have obtained by taking other cases of like difficulty.[18]

---

[16] *Camacho*, at 4251, citing *Gates*, 987 F.2d at 1397-98.

[17] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

[18] The 9th Circuit court of Appeals remanded Camacho to the district court where the district court limited its inquiry to FDCPA cases, directing the District court, "[i]n order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." Camacho at *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995); *see also Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 706 (9th Cir. 1986) (explaining that reasonable hourly rate must be based on "customary fees in cases of like difficulty").

6

Hamby et al. v. Walker et al.
Case No. 3:14-cv- 00089 TMB
Motion for Reconsideration of Order on Motion for Attorney's Fees

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 6 of 29

A District court must give adequate explanation of how it reached its decision in making a fee award. In *Carter v. Caleb Brett LLC*[19], a three judge panel for the 9th Circuit Court of Appeals vacated the district court's order awarding reduced attorneys' fees to appellant. *Carter* reiterated and confirmed prior 9th Circuit holdings requiring a sufficiently specific explanation in order to determine the reasonableness of a fee award. The greater the reduction, the more specificity required in the explanation. Appellant Rick Carter appealed the district court's order awarding him $14,268.50 in attorneys' fees and costs where his fee petition was sought $22,585. Carter appealed, arguing that the district court's failure to sufficiently explain its rationale for the fee reduction constituted error as a matter of law. The 9th Circuit agreed.

District courts have discretion in determining the amount of a fee award, but they must provide a clear explanation of their reasoning for an award.[20] In *Carter v. Caleb Brett LLC*, the district court based its award on a "blended" hourly rate (calculated using a combination of the senior and junior attorney rates) combined with a 37% reduction in compensable hours. The 9th Circuit panel opined that the district court 's focus on only two of the twelve Kerr factors was insufficient and that the court must provide more

---

[19] *Carter v. Caleb Brett LLC*, 757 F. 3d 866 (9th Cir. 2014).
[20] *Hensley v. Eckerhart*, 461 U.S. 424, 437-439 (1983).

7

Hamby et al. v. Walker et al.
Case No. 3:14-cv- 00089 TMB
Motion for Reconsideration of Order on Motion for Attorney's Fees

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 7 of 29

specific reasons for making such a significant reduction. The panel cites the 9th Circuit's opinion in *Costa v. Commissioner of Social Security Administration*, 690 F.3d 1132 (9th Cir. 2012) where it held that the magistrate was required to provide relatively specific reasons in support of ordering an hours reduction of one-third. Similarly, in *Carter*, the panel vacated the award and remanded to the district court with instructions to reconsider the amount awarded and to articulate the basis for the award with more specificity.

III.     DISCUSSION

    A.     **Kerr Factors**

The court should reconsider its order to include a thorough application of the Kerr factors to reinstate applicants' requested fees, as follows:

    **1)** *Time and Labor Required*

Shortell and Gardner were required to spend extensive time and labor to bring and litigate the case, including client recruitment, investigation, legal research, drafting of all the substantive pleadings, and meetings with each other and their co-counsel, Allison Mendel, as detailed in their declarations and fee bills submitted to this court. Shortell recruited six of the ten clients in the case and acted as the client liaison. Shortell researched and drafted the motion for summary judgment. Gardner drafted the Complaint and the Reply to the Motion for Summary Judgment as well as the Reply to the

8

HAMBY ET AL. V. WALKER ET AL.
CASE No. 3:14-cv- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 8 of 29

Opposition to the Motion for Fees. Both attorneys had to research all the applicable case law as it developed during the pendency of the case and discussed in the Motion and Opposition, because they were lead drafters of the substantive pleadings. Undersigned counsel remained in contact and met on a weekly basis throughout the case to check in and review any new cases that had issued and any needs and questions posed by the clients. Shortell spent time and labor listening to oral arguments and meeting with co-counsel, preparing for oral argument, and in arguing the due process claim in the Motion for Summary Judgment. Gardner helped prepare Shortell for oral argument and met with the clients and co-counsel prior to the oral argument. Gardner also drafted the Reply to the Motion for Fees. These are all both appropriate and necessary uses of lawyers' time.

Finally, Shortell and Gardner have spent time and labor on this motion for reconsideration, for which they have not billed, as well as the Reply to the opposition to the original motion for fees.

### 2) The Novelty and Difficulty of the Issues Presented

*Hamby et al. v. Walker et al*. presented a matter of first impression in the District of Alaska: whether the State of Alaska's laws denying same sex couples the right to marry and recognition of their marriages violated the guarantee of due process and equal protection in the 14th amendment to the United States Constitution. The case was brought

9

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-cv- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 9 of 29

less than one year after the Supreme Court's landmark decision striking down the federal Defense of Marriage Act as unconstitutional in *United States v. Windsor*[21], and four months after the Ninth Circuit decision in *SmithKline Beecham v. Abbott*[22] which determined the applicable level of scrutiny in the circuit for review of a law that discriminates on the basis of sexual orientation, but did not resolve the question of marriage. More than thirty decisions on same sex marriage bans issued from federal and state courts during the pendency of this case. None of plaintiffs' counsel in this matter, nor any other attorney in the district of Alaska had litigated these issues before applicants. Thus, applicants Shortell and Gardner were required to do substantial work to litigate this case of first impression during the time when its underlying issues and claims were and still remain, in legal flux.

The issue of same sex marriage is currently pending before the U.S. Supreme Court. Until the Supreme Court rules on *Obergefell v. Hodges* so as to resolve conflicts between the circuits, the right of same sex couples to marry is still not settled law. With Defendants maintaining the appeal of the above-captioned matter before the Ninth Circuit and joining with 14 other states in an anti-equality amicus brief to the United States Supreme Court, the outcome of this matter is still not a foregone conclusion. In its fee

---

[21] United States v. Windsor, 570 U.S. – (2013).
[22] *SmithKline Beecham Corp. v. Abbott Laboratories*, 740 F. 3d 471 – (9th Cir. 2014).

10

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-CV- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 10 of 29

order, the court essentially states that counsel knew what the outcome of the case would be, so counsel spent too much time working on it. This conflicts with the reality of preparing a civil rights case on an issue of significant national importance, as new orders were coming out of multiple states as the case was being researched, prepared, and briefed, with unpredictable results. It also conflicts with the Ninth Circuit's position that courts should generally defer to the winning lawyer's professional judgment as to how much time was required to spend on the case; "after all, he won, and might not have, had he been more of a slacker."[23]

### 3) The Skill Requisite to Perform the Legal Service Properly

This case required applicants to be skilled at recruitment and management of ten clients, to strategize the pleading of a federal civil rights case under 28 U.S.C. §1983, to be skilled at legal research and writing, to work on a project that included other attorneys, supportive staff, clients, journalists, activists, advocacy organizations, government agencies, and opposing counsel.

### 4) Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case

---

[23] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

At the outset of this case, both Shortell and Gardner resided in Seattle, Washington and traveled periodically to Anchorage to represent Alaska clients. The time required to adequately pursue this matter hindered both attorneys from accepting and performing other work. Both attorneys traveled to Anchorage in 2014 to meet with clients and co-counsel and Shortell moved back to Anchorage in July of 2014 in part because the case demanded that she be present and available to clients and co-counsel. Both Shortell and Gardner devoted focused sessions of time to the legal research, writing, editing, and argument of this case. All the time devoted to the case represented an opportunity cost to Plaintiffs' lawyers as they did not earn and have not yet received any compensation for the time they spent, whereas they would have been paid had they devoted the same time to other cases.

### 5) *Customary Fee*

The Alaska Bar Association has approximately 4000 members. A large percentage of those lawyers work for governmental organizations, NGOs, or as in house counsel. The customary fee is difficult to assess due to the very small population of lawyers who practice in the area of federal civil rights litigation against state actors. For example, Shortell is one of approximately three attorneys who focus on employment law

representing plaintiffs in Anchorage.[24] The mode of compensation for undersigned in their private practices ranges depending on whether the fee agreement is contingency, flat fee, or hourly basis. Shortell currently charges $375.00 as a basic hourly rate for routine legal advice and representation in all matters including employment law and family law. The hourly rate of $375.00 is a rate charged where clients agree to pay Shortell for her services in advance, as opposed to a complex case of first impression taken without any assurance of getting paid. Gardner has been employed most recently as in house counsel for an out of state firm. Both attorneys have agreed to charge clients less than the rate requested in this matter where payment is made in advance and payment is not contingent on recovery of damages. However, contingency fees are more difficult to quantify, and lead to variable results when reduced to an hourly rate. Undersigned counsel submit that an hourly rate of $395.00 was within the range of a reasonable customary rate for attorneys with 10-20 years of experience who undertake and prevail in complex federal litigation such as this case. Attorneys Holen, Legacki, and Hedges, all experienced civil rights attorneys in private practice, submitted declarations that support the request for an hourly rate of $395 as reasonable.

---

[24] Attorneys Lee Holen and Kenneth Legacki, who have submitted declarations in support of this motion, are the other two plaintiff-side employment lawyers known to applicants.

### 6) Whether the Fee is Fixed or Contingent

The fees sought by applicants are contingent upon their prevailing in the lawsuit and the court's award pursuant to §1988. This case was not accompanied by a demand for damages against the Defendants, which would have permitted the court to include the award of damages in its analysis.

### 7) Time Limitations Imposed by the Client or the Circumstances

Although Shortell and Gardner began to work together to develop the case in June, 2013, the Complaint in this case was filed on May 12, 2014 and the Motion for Summary Judgment, Opposition and Reply were briefed and decided by October 12, 2014. The schedule of the case required applicants Shortell and Gardner to devote large amounts of time during 2014 to the case that could have otherwise been spent earning fees in cases where payment was certain. Both attorneys were working as sole practitioners during the pendency of the case. Unlike firms where attorneys can devote time to pro bono cases and this activity is subsidized by other paying clients, Shortell and Gardner sacrificed much of 2014 to the Hamby case due to its social and legal significance, and did not work within a firm framework where that lost time could be absorbed. Due to the court's order that the case proceed on a tight deadline and the fast-moving national legal landscape, the case demanded that Shortell and Gardner devote much of their time in 2014 to the

14

Hamby et al. v. Walker et al.
Case No. 3:14-cv- 00089 TMB
Motion for Reconsideration of Order on Motion for Attorney's Fees

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 14 of 29

Hamby case. The court noted that it took the risk to the attorneys as sole practitioners into account, but failed to explain how that reasoning is consistent with the court's more than 50% reduction of the fee award. Accordingly, applicants Shortell and Gardner ask the court to reconsider its reasoning and decision in light of their sacrifice as sole practitioners and the fees that they could have earned had they not been working on the Hamby case during the tight deadlines necessary in 2014.

### 8) The Amount Involved and the Results Obtained

The Hamby Case was not a lawsuit for money damages and the fees requested were reasonable in light of the historic result obtained. Since 1998, the state of Alaska had expressly discriminated against same sex couples, denying them marriage and recognition of marriage. Applicants won a permanent injunction and a declaration that Alaska's marriage laws violated due process and equal protection clauses of the 14th amendment of the United States Constitution. As of January 2015, hundreds of same sex couples had married in Alaska. Plaintiffs achieved reversal of an era of discrimination that persisted from 1998-2014 that denied same-sex Alaskans fundamental rights and equal protection of the law. The fees requested by Shortell and Gardner were necessary and reasonable in relation to the historic result accomplished, but the court reduced those

fees by over 50%[25]. Although this court recognized that Plaintiffs' counsel benefitted their clients and "others throughout society" and stated "[t]he Court has limited its deductions from Plaintiffs' award due to this success and in order to fulfill the purpose of § 1988 to encourage experienced, uniquely-qualified attorneys to take on meritorious constitutional claims of clients wronged by the government," the court's more than 50% reduction of Shortell and Gardner's fee request will have the effect of chilling, not encouraging, future civil rights litigation against the government. Applicants urge the court to reconsider its reasoning and decision to drastically reduce their requested fees based on the remarkable result they achieved for civil rights in Alaska.

### 9) Experience, Reputation, and Ability of the Attorneys

---

[25] The court reduced Shortell and Gardner's fees by 53% as follows: Caitlin Shortell billed $395 per hour for 180.5 hours for a requested total of $71,297.50. This court reduced Shortell's hourly rate from $395 to $250 and reduced her hours by 25% to 135.4 hours for a reduced total award of $33,850.00. Heather Gardner billed an hourly rate of $395 per hour and 230.2 hours for a requested total of $90,929.00. This court reduced Gardner's hourly rate to $250/hr and reduced her hours by 25% from 230.2 hours to 172.7 hours for a reduced award of $43,175.00.

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-cv- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 16 of 29

Applicants Shortell and Gardner both graduated from law school in 1999, Shortell from Northeastern University School of Law and Gardner from Tulane Law School. Both applicants had fourteen years of legal work experience following law school at the time this case proceeded.

In 1999, Shortell was a judicial extern for District Court Judge Maxine Chesney of the Northern District of California. She also worked for the private law firm of Gold, Bennett, Cera & Sidener in San Francisco on complex multidistrict class actions in Securities Fraud and Antitrust. In 2000-2001, Shortell worked as a judicial law clerk for Superior Court Judge Stephanie Joannides in Anchorage, Alaska. After returning to Alaska permanently in 2003, Shortell worked as a lawyer at the Alaska Public Defender Agency and as an Assistant Attorney General in Child Protection and Medicaid Subrogation sections until January of 2008. In January of 2008, Shortell worked as Attorney IV, Human Rights Advocate, at the Alaska State Commission for Human Rights. From 2009 to the present, Shortell has been in private practice with Gardner and in solo practice. In her private practice, Shortell focuses on plaintiff-side employment, discrimination and harassment, as well as civil litigation against government. Shortell currently is sole counsel for Plaintiffs in a hybrid collective/class action brought under the Fair Labor Standards Act and the Alaska Statutes and Human Rights Law before this

court. Shortell has also done constitutional appellate advocacy for criminal defendants in state and federal court. The focus of Shortell's career as a lawyer since 1999 has been constitutional and civil rights, the same subject matter of the Hamby case.

Heather Gardner graduated from Tulane Law School in 1999. Following law school, she worked for private firms in Seattle and Juneau before becoming an assistant attorney general representing the Divisions of Medical Assistance, Public Health, and Public Assistance. From 2003 to 2005, she was in private practice in a firm specializing in complex civil litigation in Juneau, Alaska. In 2005 she founded her own law firm, where her practice included personal injury litigation, maritime litigation, business litigation, administrative proceedings and appeals, federal criminal appeals, and family law.

Both attorneys each had over 14 years of legal work experience at the filing of this case in 2014 and possessed the requisite skill and experience in constitutional advocacy, civil rights litigation, and the basic skills of legal research, writing, and client management necessary to bring a case of first impression involving a constitutional challenge to Alaska law with a team of multiple attorneys and ten clients.

18

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-cv- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 18 of 29

Applicants Shortell and Gardner request that the court reconsider their experience, skill, and ability due to its factual errors in noting their respective work experience and the relevancy of those experiences to the instant case.

### 10) The "undesirability" of the case

When Shortell and Gardner began investigating this case in 2013, no other known attorney, law firm, or advocacy organization would agree to take it. In response to press inquiries in December 2013, representatives of Lambda Legal, Identity Inc, and the ACLU of Alaska all stated that they did not intend to bring an Alaska marriage case. The lack of any other local organization bringing the case made it "undesirable." In addition, the case required advocating for LGBT people, a group that courts have recognized has been a despised minority group. Applicants respectfully request that the court reconsider its order based on the undesirablility of the case that applicants brought when no other attorneys or organizations would do so in the State of Alaska on behalf of an unpopular minority that continues to experience discrimination in the state.

### 11) Nature and extent of the professional relationship with the client

Counsel has outlined the relationship and efforts with the clients as set forth above.

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-cv- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

### 12) Awards in similar cases

The court considered similar or parallel marriage cases outside Alaska, but did not apply rates from within the District of Alaska, and few parallels exist. Counsel notes that the total award claimed by the Alaska attorneys was considerably less than the amount claimed by and awarded to the Idaho plaintiffs. The court failed to adequately explore this factor and applicants urge the court to reconsider the Motion for Fees in light of this factor.

### B. Errors in the Court's April 15, 2015 Order Require the Court to Reconsider and Vacate its Order as to Undersigned Counsel and Reinstate the Fees Requested

Applicants Shortell and Gardner request that the court reconsider its order in light of manifest factual and legal errors, each of which appear to have factored into the court's decision to reduce the fee award requested by counsel:

1. Undersigned counsel did not "assist with the case" [Doc. 62 at 8] but in fact, brought 6 of 10 Plaintiffs into the case and drafted the preponderance of substantive pleadings in this matter. As the timesheets of both counsel indicate, Gardner drafted the Complaint, the Reply to Defendant's Opposition to Motion for Summary Judgment and

the Reply to Defendant's Opposition to Motion for Attorney's Fees.[26]  Caitlin Shortell drafted the Motion for Summary Judgment, organized the Plaintiffs, and performed the preponderance of work involved in initially bringing the case, preparing the clients, meeting with clients before the complaint was filed, interacting with clients after the case was underway, and dealing with public inquiries about the case. Mendel's office brought four of the Plaintiffs into the case, edited and made inclusions in documents, and drafted the pre-trial conference notice, the opposition to the stay in mid-October 2014, and the motion for fees. The delegation of substantive work between the attorneys in this matter was divided between Mendel's office on one hand and undersigned counsel on the other, and is reflected in the time spent by undersigned counsel set forth in their timesheets.

Undersigned counsel began the legwork to bring this case in late June, 2013, immediately after the *Windsor* decision was issued.  Because of the nature of the case, both attorneys performed work that is not reflected in time sheets because it is non-compensable by this court under 42 U.S.C. §1988. This was also explained in the Declarations of both attorneys, and is also evident in the Affidavit of Blakeley. The court's repeated assumption that Mendel "led" the case, its "legal team" [Doc. 62 at 14, 17] and its other assumptions about the relative value and weight of the attorney's

---

[26] As Allison Mendel is not participating in this motion, Counsel cannot speak to her and her associate's billing in this matter.

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-CV- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

21

contributions is not based upon any facts present or relevant in this matter, but appears to have factored heavily into its decision to impose a substantially lower hourly rate (and greater discount of both rate and hours) on undersigned counsel than upon Mendel, whose compensable effort was more limited.[27] It also appears to be the basis for the court's subjective evaluation of experience and reputation, without any reference as to any specific basis for those conclusions.

Because undersigned counsel was largely responsible for the briefing and were in reliable communication with each other, undersigned counsel met on a regular basis by phone to discuss, among other matters: new cases as they were decided; legal scholarship, theories, and news articles on the matters before the court; the postures of pending cases; recorded oral arguments and the judges' questions as they became available; and questions presented by the Plaintiffs themselves to their counsel. There are all reasonable uses of attorney time, and would in fact be reasonably billable to private clients who were headed to federal court on a rapidly evolving issue. Not all of the time the attorneys spent working on this case was actually reflected in their timesheets. If the Plaintiffs were directly paying for the work performed by counsel, they would reasonably

---

[27] Counsel does not suggest that Mendel is not entitled to her claimed fees. To the contrary. But undersigned counsel does not represent Mendel or have any authority from her to speak for her.

22

HAMBY ET AL. V. WALKER ET AL.
CASE No. 3:14-cv- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 22 of 29

expect Counsel to be fully informed and up to date on all developments on their issue, regardless of how quickly they occurred, and they would expect their attorneys to direct their case based upon the latest developments. Moreover, the hours claimed do not reflect all of the time counsel spent reasonably working on, researching, discussing, or otherwise occupied by the case. Counsel exercised discretion in billing as billing occurred.

2.     The court also misstated undersigned counsel's legal experience as set forth in Declarations. For example, as an AAG, Gardner did not do "child protection litigation", nor does her practice focus on "domestic matters" as the court states. [Doc 62 at 9, FN 50.] These are relevant errors because they appear to have factored into the court's eventual determination of the artificial hourly rate it assigned to counsel. If the court is relying upon date of admission to practice in Alaska, it has not explained why that is the relevant basis for calculating an attorney's experience, rather than the year the attorney completed law school. Gardner was admitted to practice in 1999, and Shortell in 2004. Yet the court assigned both attorneys the same substantially reduced hourly rate.

3.     It is also unclear why the court, finding that Gardner's experience merited an hourly rate of only $250 an hour, awarded Mendel a different rate for a longer career that has actually been focused on family law, found no reason to reward Shortell's experience litigating discrimination claims, an area of practice directly relevant here, and

assigned an hourly rate of only $75 less to an associate with less than five years of experience. The court does not explain why any of these characterizations, regardless of accuracy, lead to the conclusion that the hourly rate claimed by counsel is inappropriate. The court's reasoning is not adequately explained as required by the Ninth Circuit.[28]

4.     The court also characterizes "experience working on LGBT issues" as significant to counsel receiving a compensatory fee in this matter.  This is an arbitrary and circular basis for reducing counsels' fee, given the fact that this case could certainly not have been brought before *Windsor* (June 2013) and arguably not before *SmithKline Beecham* (January 2014) and the Alaska Supreme Court was effectively denied jurisdiction over this matter by the constitutional amendment this case overturned.  Since the courts either did not view same sex couples or LGBT people as meriting protection or were prevented from doing so prior to 2013, very few Alaska attorneys have substantial experience pursuing LGBT claims.  For example, the Alaska State Commission for Human Rights does not investigate or pursue claims of discrimination against LGBT people.  As a result, Shortell was barred from pursuing such claims when she was the agency's attorney, and the court has declined to recognize her experience as valuable, when the lack of any protections for LGBT people in Alaska resulted in a legal

---

[28] *Moreno* at 1112.

environment in which challenging any form of discrimination against them was virtually impossible.

5.    The court also did not explain why it refused to consider the evidence of the hourly rates offered to private contract counsel by the State of Alaska in 2014 (c. $380.00) as useful in determining the reasonableness of counsel's requested hourly rate, but did consider the rate ($225.00) proposed by Defendants in their conclusory opposition, which Defendants conceded was several years old, based upon "studies" not provided to the court, was not intended to be a compensatory rate, and was unsupported by any offered evidence other than Defendants' counsel's affidavit. As Defendants acknowledged that the rate they proposed had been in effect for years, the Ninth Circuit has specifically disallowed the evidence Defendants offered. "We also note that in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services."[29]

6.    Moreover, the court failed to consider that Defendants did not meet their

_____

[29] *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003) (holding that it was an abuse of discretion to apply market rates in effect more than two years before the work was performed).

burden of rebuttal.  Defendants opposed the fee motion for the general reasons that they believed that undersigned counsel took too much time and asked for a too-high hourly rate. It is notable that Defendants admitted to about 670 hours spent defending the case; the court's reduction of all of Plaintiffs' counsels hours reduces the total hours allowed to be billed to 542.2 hours [Doc. 62 at 20], more than 127 fewer total hours than Defendants claimed to have spent defending it.  Neither of Defendants' vague bases of opposition form anything approaching an adequate rebuttal.  In *Moreno*, the Ninth Circuit warned that

> "the burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties… If opposing counsel cannot come up with specific reasons that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut."[30]

6.    The court should also reconsider the reasonablenesss of applicants' requested fees in comparison to cases of like difficulty and should not limit its inquiry to equal marriage cases in other districts. The court did not base its analysis on cases of like difficulty in the district, but considered rates in the context of equal marriage lawsuits from other districts.  The court appears to have relied primarily on a rate requested by an attorney in the Western District of Kentucky, which is not comparable to the local

---

[30] *Moreno* at 1116.

Hamby et al. v. Walker et al.
Case No. 3:14-cv- 00089 TMB
Motion for Reconsideration of Order on Motion for Attorney's Fees

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 26 of 29

market. The failure to consider the rates of attorneys in the district and restriction of comparison to other FDCPA cases were a basis for remand in *Camacho*. The court commented, "[i]n order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases."[31]

7. The court should also reconsider its order's impermissible double discounts, as established in *Moreno*. By cutting both counsels' hourly rate and the hours reasonably spent, the court has imposed draconian reductions that are not justified by either the circumstances of the case or the market rates in the district. As the *Moreno* court warned:

> "It is possible…for a district court to reduce both the hours and hourly rate awarded for some tasks. But the district court must exercise extreme care in making such reductions to avoid double counting… [t]he district court may properly use the simplicity of a given task as justification for a reduction in the rate for the hours spent performing that task or as justification for a reduction in the overall rate, but not both." [32]

---

[31] *Camacho*, supra, citing *Tolentino*, 46 F.3d at 652; *see also Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 706 (9th Cir. 1986).

[32] *Moreno* at 1115-1116.

The court's order has imposed upon undersigned counsel draconian cuts where Defendants offered no effective rebuttal, in a matter of monumental significance in the development of civil rights, and on an issue where the final outcome is far from certain, because it is currently pending before the U.S. Supreme Court. Plaintiffs achieved a significant victory, and the court should not deter other attorneys from being willing to bring similar claims before the court by arbitrarily cutting their fees to a noncompensable level without justification.

IV.    CONCLUSION

Based upon the above, the court should reconsider its April 15, 2015 Order, reverse its reductions of counsel's requested fees pursuant to 42 U.S.C. § 1988, and reinstate counsels' fees as requested by undersigned counsel in the original motion for fees.

RESPECTFULLY SUBMITTED this 13th day of May, 2015 at Anchorage, Alaska.

By:    _____/s/_____

Heather Gardner #0111079
Caitlin Shortell #0405027

28

HAMBY ET AL. V. WALKER ET AL.
CASE NO. 3:14-cv- 00089 TMB
MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR ATTORNEY'S FEES

Case 3:14-cv-00089-TMB   Document 63   Filed 05/13/15   Page 28 of 29

CERTIFICATE OF SERVICE

I certify that on May 13, 2015 I caused to be served by CM/ECF electronic service the above document, attached declarations of Caitlin Shortell, Heather Gardner, Lee Holen, Ken Legacki, and Jessica Hedges, and proposed Order on the counsel of record set forth below:

Allison Mendel, Esq.

William Milks, Esq.

Kevin Wakeley, Esq.

/s/ Caitlin Shortell